**SEG EMPLOYEES CREDIT UNION, Appellant,**

v.

**W. S. SCOTT and Geneva Scott, his wife, Appellees.**

Court of Appeals of Kentucky.

Aug. 5, 1977.

William L. Montague, Stoll, Keenon & Park, Lexington, for appellant.

E. Durward Weldon, R. Bruce Lankford, Georgetown, for appellees.

Before GANT, HAYES and LESTER, JJ.

**404** ■

GANT, Judge.

Appellees purchased a home in Georgetown, Kentucky, on May 10, 1962, assuming an existing loan with Equitable Insurance Company of approximately $17,000.00. Immediately thereafter, W. S. Scott attempted to purchase credit life and disability insurance from the lender but could not qualify after three physical examinations. Being an employee of Southeastern Greyhound for about 30 years and a member of the Credit Union at this company, Mr. Scott had received flyers and advertisements from the appellant soliciting loans from its members. One of these which was received by the appellees contained the following language:

Besides all this . . . our loans are insured at no extra cost.

In other words, if I borrowed from my credit union, and then died or became permanently disabled . . . my loan would be paid in full with interest as provided in our credit union's Loan Protection Insurance Contract . . . and as I said before, at no additional cost. Loan Protection means credit union debts shall die with the debtor.

1. How is my loan insured?

Our credit union has a contract for loan protection insurance with CUNA MUTUAL, the credit union insurance company. The life of each eligible borrower is insured in the amount of his loan balance . . . up to $10,000.00.

2. Who is eligible for this insurance?

Every borrower under the age 70, who is able to perform (or within a reasonable time to resume) the usual duties of his livelihood when he makes the loan.

3. Who pays for this insurance?

The credit union pays for it out of its earnings. Borrowers and members pay no individual charges.

4. How are the claims paid?

If an insured borrower dies before age 70, or is totally and permanently disabled before age 60, CUNA MUTUAL sends our credit union a check for his loan balance.

5. Here's a good example of Loan Protection at work.

Let's suppose that today I borrowed $300.00 to buy a refrigerator . . . and that tomorrow I became disabled or died. My loan would be paid for me, with interest, as provided in the insurance contract.

(The . . . above are verbatim and do not signify omissions.)

After being denied coverage for credit life and disability insurance, Mr. Scott contacted an officer of the credit union about changing his loan to that organization, subsequently made application therefor, the application was approved and the loan made. It is significant that at no time was any mention of insurance made by either the appellees or any officer of the company throughout these proceedings, but it is stipulated that both parties knew of the existence of the insurance and that it was with CUNA Mutual Insurance Society.

At the time of closing, or just prior to closing or possibly just after closing, the borrowers, appellees, were delivered a certificate of insurance and accepted it. This certificate contained the following clause:

(g) TERMINATION Insurance shall continue only so long as the required premium is paid by the Credit Union to CUNA Mutual. Upon written notice from either party to the other and given not less than 30 days in advance, both CUNA Mutual and the Credit Union reserve the right to terminate the entire contract as to further and future coverage.

The appellees were furnished with only the Certificate of Insurance and the actual policy was never exhibited to them, the policy being kept on file at the offices of the appellant. The appellees were never advised by the appellant that the policy was there and were never invited to inspect the policy.

Some 19 months after the loan was closed, the credit union terminated the policy with CUNA Mutual because of increase in premium. The record discloses that the original contract between CUNA Mutual and appellants, dated in 1957, called for a monthly premium payment of $0.65 per

$1,000.00 and that by May 1, 1964, the premium had risen, by various steps, to $1.26 per $1,000.00. Appellees, along with all others in Mr. Scott's position, were notified of the cancellation. They made no protest of the cancellation and did not talk with anyone at all about the insurance until after Mr. Scott's disability retirement on December 31, 1967.

After retirement, appellees continued to pay their loan until it reached about $9,000.00 and then discontinued payments after July 13, 1970, bringing this action and asking the court to determine their rights under the contracts and for an order directing the credit union to release the mortgage.

The lower court held that the appellant "by representing to (appellees) that their loan would be insured, promised to keep the credit life and insurance in force for the life of the loan." The court went on to hold that when the appellant cancelled the policy it breached the contract and became a "self-insurer of the loan."

There are two contracts at issue in this case. The first is one implied in fact between the appellant and appellees. The second is a written contract between appellant and CUNA Mutual Insurance Society, under which the appellees were donee third party beneficiaries.

■ We can quickly dispose of the second contract. This is not an action by the donee third party beneficiaries against the insurance company, as the policy had been terminated pursuant to an action by the appellant under the terms of the policy. The law is quite clear that where the right to alter, terminate or rescind a contract is specifically reserved in that contract, it may be rescinded by the parties without liability to the donee third party beneficiary. See *Rhodes v. Rhodes*, Ky., 266 S.W.2d 790 (1953).

■ If the appellees are to recover, it is clear that they must base their action on a contract implied in fact between the appellees and the appellant. It has long been the law in Kentucky that a contract implied in fact is where there was a meeting of the minds upon the promises of the respective parties but without any definite expressed or categorical agreement, the mode of proof of the promises being by evidence of facts and circumstances from which the promises may be inferred or reasonably deduced. See *Thompson v. Hunter's Ex'r*, Ky., 269 S.W.2d 266 (1954). We have related the relevant facts and circumstances of this case as indicated in the stipulation upon which this case was tried and conclude that there was a meeting of the minds between the appellees and appellant on three things, to-wit:

1. That appellant would lend appellees the sum of $17,500.00 at 5% interest for 15 years, with stipulated bi-monthly payments.

2. That appellees would execute a note and mortgage reflecting these terms.

3. That appellant would furnish to appellees, without cost, a credit life and disability insurance policy on said loan up to $10,000.00.

■ In considering the proof of the promises from the facts and circumstances of this case, we must look to the pamphlet distributed by the appellant to all of its members, including the appellees, and upon which the appellees relied. Our first determination must necessarily be whether the appellees were reasonable in their assumption that they would have credit life and disability insurance for the duration of their loan. In examining this pamphlet, we find these phrases:

In other words, if I borrowed from my credit union and then died or became permanently disabled . . . my loan would be paid in full with interest as provided in our credit union's Loan Protection Insurance Contract . . .

Loan Protection means credit union debts shall die with the debtor.

If an insured borrower dies before age 70, or is totally and permanently disabled before age 60, CUNA Mutual sends our credit union a check for his loan balance.

It is apparent to this court that the appellees were, in fact, reasonable in their as-

sumption that their loan would be protected for the life of the loan under the circumstances that if Scott died before age 70 or became disabled before age 60 his loan would be paid in full, with interest.

We must then examine the effect of this pamphlet on the contract and determine whether it became a part of this contract.

We have been able to find two cases in Kentucky which touch upon this subject. The first is the case of *Southern Mutual Life Insurance Company v. Montague*, 84 Ky. 653, 2 S.W. 443 (1887). In this case, the insurance company had issued a pamphlet to its agents and representatives making certain representations as to the plans upon which the company insured. The pamphlet was exhibited to the insured and he purchased a policy from the company. The pamphlet represented that if the insured paid as many as four premiums the company would issue him paid-up life insurance for the amount of the cash premiums in excess of the cost of the insurance for the period covered by the policy. The actual policy did not so provide and the court held in that case that the pamphlet became a part of the contract and should be considered in connection with the policy in determining what the contract was. In that case the court held that the pamphlet was "an inducement for the appellee to take the insurance and pay the premium." The court went on to say:

> The printed pamphlet was not only the inducement, but formed a part of the consideration for which the premium notes were executed and the contract entered into by the assured. The rights of the assured under it was the prime cause for his accepting the policy, and gave the appellant as an insurance company . . the preference over all others, and to hold that it was not intended as a part of the contract would be sustaining a fraud that no court of conscience could sanction.

This case was subsequently cited with approval in the case of *Forman v. Mutual Life Insurance Co.*, 173 Ky. 547, 566, 191 S.W. 279, 286 (1917). That case differed from the instant case and from the *Mon-*

*tague* case. in that the pamphlet was actually attached to the policy but the language in the holding in that case reads as follows:

> (2) That if there is a reasonable doubt as to the meaning of the contract, that construction should be adopted that will carry out the understanding of the insured as to the meaning of the contract at the time he accepted it, if it is fairly made to appear that his understanding of its meaning was produced by and based on representations and assurances in writing made to him by the company before or at the time the contract was executed, and these representations and assurances were of such a nature as to reasonably induce the insured to believe that his understanding and construction of the contract would be carried out.

In the case of *Lewis v. Continental Life & Acc. Co.*, 93 Idaho 348, 461 P.2d 243, 36 A.L.R.3d 529 (1969), there was an action by a widow to recover benefits under her husband's group life policy. In that case a handbook had been distributed explaining the coverage and the handbook was at variance with the actual terms of the policy. The court pointed out that the handbook explained the coverage in clear, formal, and easily read English and that it could be reasonably expected that employees would read and rely upon it, and the court upheld the right of the widow to recover the death benefits based upon the representations made in the handbook.

The inducement and reliance in the instant case occurred when a pamphlet was circulated to a particular group of employees by the appellant. The pamphlet was obviously a solicitation for loans from this particular group of people by an association to which the appellees belonged. It is our opinion that the representations made in the pamphlet became a part of the contract implied in fact between the appellant and the appellees.

■ In the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain—

the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled. See C. McCormick, *Damages* § 137.

For the reasons above stated, the judgment of the lower court is affirmed.

All concur.