(636 P.2d 1368)

No. 52,556

ETTA J. SWANSTON, ETTA J. SWANSTON, as Administrator for the Estate of Raymond R. Swanston, *Appellant,* v. CUNA MUTUAL INSURANCE SOCIETY, *Appellee.*

Opinion filed December 10, 1981.

*N. Trip Shawver,* of Wichita, for the appellant.

*Byron Brainerd,* of Wichita, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

FOTH, C.J.: Plaintiff, administrator of the estate of Raymond R. Swanston, brought this action for benefits under a group credit life insurance policy issued by defendant through the McConnell Air Force Base Credit Union in Wichita. She appeals from summary judgment rendered in favor of defendant, Cuna Mutual Insurance Company.

The trial court's judgment was rendered on stipulated facts incorporated in the journal entry:

"1.   Raymond R. Swanston was, prior to February 1, 1963, in the military service as a member of the Air Force and retired on that date holding the rank of Major.

"2. The duties of Raymond R. Swanston while with the Air Force were as an 'appropriation and Accounting Officer in Base Supply'.

"3. Subsequent to February 1, 1963, Decedent, Raymond R. Swanston, was employed at Beech Aircraft Corporation, Lear Siegler and Instruments and Flight Research, Inc. in which employments the duties were similar to his duties during his military career.

"4. On or prior to May 25, 1976, Raymond R. Swanston was a member of the McConnell AFB Federal Credit Union.

"5. On or about May 25, 1976, Raymond R. Swanston made application to McConnell AFB Federal Credit Union of Wichita, Kansas for a loan as is evidenced by Exhibit 'A' attached to the deposition of Etta J. Swanston, which Exhibit is made a part hereof by reference.

"6. That prior to and on May 25, 1976, Cuna Mutual Insurance Society had issued to McConnell AFB Federal Credit Union of Wichita, Kansas, a group Life Insurance Contract, Loan Protection. (Form No. LO-7 Kan. 1-60).

"7. That on or about May 25, 1976, Raymond R. Swanston secured a loan from the McConnell AFB Federal Credit Union of Wichita, Kansas, in the principal amount of Five Thousand Nine Hundred Dollars ($5,900.00).

"8. That said Group Life Insurance Contract referred to in Finding No. 6 above and the Certificate of Insurance Loan Protection issued by the Defendant pursuant to such Group Life Insurance Contract, a copy of which is attached to Plaintiff's Amended Petition and incorporated herein by reference, limited insurance coverage in part as follows:

'the member is then physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood.'

"9. Raymond R. Swanston died August 17, 1977.

"10. That on May 25, 1976, and on no date subsequent to that date was Raymond R. Swanston physically able to perform the requirements of the employment in which he was engaged in the Air Force, with Beech Aircraft Corporation, with Lear Siegler or with Instruments and Flight Research, Inc."

The trial court went on to say that the issue revolves around the definition of the term "livelihood" as used in the basic contract and the certificate issued to Swanston. Its conclusion was:

"12. Livelihood in this situation means that the applicant must be employed, must be occupied in some occupation or employment.

"13. The applicant must be substantially employed in some occupation in some business profession."

Since Swanston was not engaged in any "livelihood" as so defined, the court found no coverage.

We agree with the trial court's ultimate result, but we arrive by a slightly different route. "A court, in construing an insurance policy, should consider the instrument as a whole and endeavor to ascertain the intent of the parties from the language used, taking into account the situation of the parties, the nature of the

subject matter and the purpose to be accomplished." *Mah v. United States Fire Ins. Co.,* 218 Kan. 583, Syl. ¶ 1, 545 P.2d 366 (1976). In this case we must determine what was intended by inserting in the policy the condition that a member would be covered only if "the member is then physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood." Bearing in mind that this was *group* life insurance where the usual life insurance physical examination is not required, it seems readily apparent that the company sought some minimum level of physical well-being to be exhibited by a credit union member before the company would assume the risk.

The clause in question is minimal: it requires no level of health beyond being physically able to perform the usual duties of one's livelihood. As we read it, the clause does not require the insured to be actually employed, either at the time the loan is taken out "or within a reasonable time" thereafter. It does, however, require the physical ability to perform the duties of the borrower's "livelihood."

In this case it was stipulated that Swanston was physically unable to perform the duties of any money-making activity in which he had ever engaged. No other potential "livelihood" was suggested for him requiring effort on his part in return for pay. Plaintiff's argument below and on appeal is simply that collecting his retirement pay was his "livelihood," even though he was physically unable to engage in any gainful occupation. To so construe the policy clause would, in our opinion, run counter to the manifest purpose of the policy provision requiring a minimum level of physical well-being.

Two cases relied on by plaintiff do not help her. In *Ethyl Employees Federal Credit Union v. Cooper,* 159 So. 2d 610 (La. App. 1963), the insured welder had had a heart attack which disabled him from carrying on that occupation. However, he continued in substantially remunerative work in the construction and sale of houses through a realtor, and was so engaged when he borrowed and when he died. There can be no quarrel with the court's conclusion that the insured there was covered. He met the identical condition we have here in a policy issued by this defendant in that case.

Plaintiff's second case is *McCarty v. McCarty,* 453 U.S. 210, 69 L.Ed.2d 589, 101 S.Ct. 2728 (1981). In holding that military

retirement pay is not subject to division as community property, the court noted that a retired officer is subject to recall to active duty at any time. This, the court noted, had led to a characterization of such pay as "reduced compensation for reduced current services." 453 U.S. at 222, 69 L.Ed.2d at 599. The argument might be persuasive if Swanston had been physically able to respond to a recall to active duty. It might then have been said that his "livelihood" was that of a retired Air Force officer, subject to recall to active duty, and that he was "physically able to perform" the duties of that livelihood. Swanston, however, was stipulated to have been physically unable to perform the usual duties of an Air Force officer. The fact that he apparently was never placed on any official "disabled" list does not change the fact of his stipulated physical disability.

Finally, plaintiff now argues that defendant had a right to require proof of Swanston's insurability and, having never exercised that right, waived any question of coverage. However, the plaintiff failed to present this theory to the trial court and cannot raise it on appeal. *Fleming v. Etherington,* 227 Kan. 795, Syl. ¶ 7, 610 P.2d 592 (1980). Even then, it is the well settled general rule waiver and estoppel cannot be used to expand the *coverage* of an insurance contract. See 43 Am. Jur. 2d, Insurance § 1058, p. 983 (1969); 45 C.J.S., Insurance § 674, p. 616 (1946). Defendant's failure to require further proof of insurability did not serve to meet the explicit condition of coverage.

Affirmed.