8 Kan. App. 2d 538 (1983)
661 P.2d 826
ETTA J. SWANSTON, and Etta J. Swanston, as administrator of the estate of Raymond R. Swanston, Appellant,
v.
McCONNELL AIR FORCE BASE FEDERAL CREDIT UNION, Appellee.
No. 54,535
Court of Appeals of Kansas.
Opinion filed April 14, 1983.
N. Trip Shawver, of Wichita, for the appellant.
Byron Brainerd, of Wichita, for the appellee.
Before FOTH, C.J., SPENCER and SWINEHART, JJ.
SPENCER, J.:
This is an action against the named credit union alleging breach of express or implied contract to provide credit life insurance and violations of the Kansas Consumer Protection Act, K.S.A. 50-623 et seq. After the jury was impaneled and plaintiff had presented her case in chief, the court sustained defendant's motion for directed verdict. Plaintiff has appealed and defendant has filed its cross-appeal from an order finding plaintiff a proper party in interest.
Mr. Swanston was a member of the credit union. Mrs. Swanston was not. Prior to May 25, 1976, the Swanstons had received various publications from the credit union. In addition to providing items of general interest to its members, the publications often contained information regarding services provided by the credit union to its members, including the availability of credit life insurance to its borrowers at no cost. For example, the credit union in a July 3, 1975, advertisement stated:

*539 "Another thing, with this credit union loan I get life insurance at no extra cost, because I qualify. Which means if something happens to me, the insurance portion of my loan is paid in full. This would surely take a big burden off my wife and family."
In a February 26, 1976, publication, the general manager of the credit union commented:
"In addition, every eligible borrower gets loan protection life insurance without additional cost, to pay off the balance owed in case of death. That's a real plus  at no extra charge to you."
The general manager, in a May 6, 1976, publication stated:
"There are other methods of profit for our members too, which include loan insurance (credit life) up to $10,000.00 at no additional cost to the borrower. This means, if you take out a loan for a $10,000.00 mobile home, in the event of your death, your loan balance will be paid off in full by the CUMIS Insurance Company and your beneficiary will get a clear title on the mobile home. This is true for all loans whether it is a secured or unsecured loan."
Relying at least in part on the representations contained in the various publications and the fact they had previously done business there, on May 25, 1976, the Swanstons sought and were granted a loan from the credit union for $5,900. Both plaintiff and her husband executed a promissory note and security agreement in favor of the credit union. Mr. Swanston died August 17, 1977. At that time there was an unpaid balance on the debt of $3,793.91. Plaintiff was subsequently appointed administratrix of her husband's estate and commenced this action in her individual as well as in her representative capacity.
At the time the loan was made, the credit union had in force a group credit life insurance policy with Cuna Mutual Insurance Society, which contained the following limitation:
"PHYSICAL REQUIREMENTS. Coverage under this Contract may be issued for any loan upon condition that the Member is physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood."
See Swanston v. Cuna Mutual Ins. Society, 7 Kan. App.2d 28, 636 P.2d 1368 (1981).
The loan application did not make reference to the physical requirements of the applicant, nor request information regarding physical health. According to the testimony of Chester A. Green, who was then the assistant treasurer of the credit union, a member's physical condition had nothing to do with the determination of whether that person was an eligible borrower. *540 Plaintiff testified it was her opinion that she and her husband as makers on the note were insured, and the loan would be paid off in full in the event of his death. She also testified she had seen defendant's Exhibit A, certificate of insurance, in connection with earlier loans they had obtained through the credit union, and probably had read it or at least had it available to her, but that they had not received a copy of the certificate at the time they made the loan in question.
In sustaining the motion for directed verdict, the trial court found in substance there was no express or implied warranty by defendant to Mr. Swanston regarding his eligibility for credit life insurance under the policy carried by the credit union; and Mr. Swanston had actual and/or constructive knowledge of the terms and conditions of the insurance policy afforded members of the credit union by reason of defendant's insurance program and was not eligible for benefits under that program. The court also found the Consumer Protection Act not applicable to this case.
The scope of appellate review of a motion for directed verdict is as set forth in English Village Properties, Inc. v. Boettcher & Lieurance Constr. Co., 7 Kan. App.2d 307, Syl. ¶ 1, 640 P.2d 1282, rev. denied 231 Kan. 799 (1982):
"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict."
It must be accepted that, because of his physical condition at the time this loan was closed, Mr. Swanston was not insured under the group credit life insurance policy issued to defendant. Swanston v. Cuna Mutual Ins. Society, 7 Kan. App.2d 28. However, this action is not one to recover under that policy. Rather it is one that seeks to hold defendant accountable for its failure to procure credit life insurance to cover the Swanstons' loan. At issue then is whether there was in fact a contract between the parties that such insurance was to be provided as a part and parcel of the loan itself, and by whatever means defendant might elect. Cf. Marshel Investments, Inc. v. Cohen, 6 Kan. App.2d 672, 634 P.2d 133 (1981).
Plaintiff alleged breach of express or implied contract. We find nothing in the record before us to support the existence of an *541 express contract to provide insurance at the time the note was executed. There is no evidence of an actual, open agreement between the parties. Plaintiff testified no one specifically told them the loan was insured and there is nothing to indicate credit life insurance was even mentioned. However, this does not foreclose the possibility of an implied contract, one implied in fact, which arises from facts and circumstances showing mutual intent to contract. Mai v. Youtsey, 231 Kan. 419, 422, 646 P.2d 475 (1982). Such might very well exist under the facts as established by plaintiff's evidence. The representations by defendant, made and published to all of its members, were obvious solicitations for the business of its members, i.e. for loans of money to be made by defendant to its members with the clear indication that with each deal, "every eligible borrower gets loan protection life insurance without additional cost, to pay off the balance owed in case of death." The record before us seems to indicate Mr. Swanston, as a member of the credit union, was an eligible borrower, and as an inducement to his borrowing money from the credit union he was to get "loan protection life insurance without additional cost...." The offer so made by defendant would have been accepted when the Swanstons obtained their loan.
We have not been made aware of any Kansas authority which is factually similar to the case at bar. However, in SEG Employees Credit Union v. Scott, 554 S.W.2d 402 (Ky. Ct. App. 1977), the court found the contract implied in fact where the credit union, through flyers and advertisements, made similar representations to provide credit life insurance at no cost to its members. There it was stated:
"The inducement and reliance in the instant case occurred when a pamphlet was circulated to a particular group of employees by the appellant. The pamphlet was obviously a solicitation for loans from this particular group of people by an association to which the appellees belonged. It is our opinion that the representations made in the pamphlet became a part of the contract implied in fact between the appellant and the appellees." 554 S.W.2d at 406.
The trial court found defendant did not agree to provide insurance for all borrowers at all times and for all reasons regardless of physical condition, and further on May 25, 1976, Mr. Swanston had actual and/or constructive knowledge of the terms and conditions of the insurance coverage offered the members of the credit union. These conclusions may prove *542 accurate. However, if we resolve all facts and inferences reasonably to be drawn from the evidence in favor of plaintiff, the evidence before us at this stage is not such but that reasonable minds could reach different conclusions. We conclude therefore that the evidence so far adduced was sufficient to go to the jury and the court erred in sustaining the motion for a directed verdict.
The trial court found the Kansas Consumer Protection Act (KCPA) was not violated by defendant based upon plaintiff's evidence. Plaintiff contends she presented sufficient evidence of a deceptive and/or unconscionable practice. Defendant asserts the KCPA is not applicable because it is not a "consumer transaction" under the provisions of K.S.A. 50-624(c).
We believe this issue is resolved by State ex rel. Stephan v. Brotherhood Bank and Trust Co., 8 Kan. App.2d 57, 649 P.2d 419, rev. denied September 24, 1982, wherein it was held:
"The grant of a home loan mortgage by a bank to an individual is a consumer transaction under K.S.A. 50-624(c)." Syl. ¶ 1.
See also Willman v. Ewen, 230 Kan. 262, 267, 634 P.2d 1061 (1981); State ex rel. Miller v. Midwest Serv. Bur. of Topeka, Inc., 229 Kan. 322, 323, 623 P.2d 1343 (1981). Furthermore, as reflected by the record before us, defendant is not engaged in the insurance business but has merely purchased insurance coverage as an incidental service to its members.
Under K.S.A. 50-627(b), "[t]he unconscionability of an act is a question of law for the court to determine." Willman v. Ewen, 230 Kan. at 267. The conclusion by the trial court is not erroneous as a matter of law. Even if the advertisements were misleading, the Swanstons still derived a material benefit from the transaction (the loan itself). Credit life insurance was incidental to the main purpose of the transaction and was not the sole reason for borrowing from the credit union. Under the circumstances, the trial court was justified in concluding defendant's conduct was not unconscionable. Cf. Musil v. Hendrich, 6 Kan. App.2d 196, 627 P.2d 367 (1981); Meyer v. Diesel Equipment Co., Inc., 1 Kan. App.2d 574, 570 P.2d 1374 (1977).
Whether the advertising was deceptive is more troublesome. Even if the credit union acted innocently and did not intend to injure the Swanstons, it may still be liable under the KCPA. Willman v. Ewen, 230 Kan. at 267; Bell v. Kent-Brown Chevrolet *543 Co., 1 Kan. App.2d 131, 561 P.2d 907 (1977). A showing of actual damages is not required to support recovery of a civil penalty. Watkins v. Roach Cadillac, Inc., 7 Kan. App.2d 8, 637 P.2d 458 (1981), rev. denied 230 Kan. 819 (1982).
In reviewing the evidence in favor of the Swanstons, there was a submissible issue to the jury. Defendant's publications clearly suggested all of its eligible borrowers would receive free credit life insurance. Only one of the publications introduced into evidence noted the physical requirements, and it was in regard to a different type of insurance coverage. All members were given a similar document when they became members, detailing the requirements. The trial court in its oral findings charged the Swanstons with knowledge of the terms of the policy, and further noted that "today's consumer knows that insurance policies have exceptions...." Although these findings of the trial court may have been reasonable, the issue should have been left with the jury.
By its cross-appeal, defendant contends the trial court erred in finding Mrs. Swanston could assert the present action in her individual capacity. Because only Mr. Swanston was a member of the credit union, defendant argues the action was properly commenced only on behalf of the estate.
In Thompson v. James, 3 Kan. App.2d 499, 502, 597 P.2d 259, rev. denied 226 Kan. 793 (1979), the court discussed the requirements of K.S.A. 60-217(a):
"K.S.A. 60-217(a) requires that every action be prosecuted in the name of the real party in interest. The real party in interest is the person who possesses the right sought to be enforced, and is not necessarily the person who ultimately benefits from the recovery. [Citation omitted.] The real party in interest requirement has as one of its main purposes `the protection of the defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party.' [Citation omitted.]"
Although Mrs. Swanston was not a member of the credit union, she signed the promissory note and security agreement, and was liable for the outstanding balance of the loan. Following her husband's death she continued to make the monthly payments and eventually paid the balance of the debt. Assuming defendant *544 had an obligation to procure the insurance, Mrs. Swanston in her individual capacity is clearly a proper party plaintiff.
Reversed and remanded for new trial.