RENDERED: APRIL 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

**OPINION RENDERED ON OCTOBER 30, 2020 WITHDRAWN**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0928-MR

ALL THAT N MORE, LLC;
MARTY NILEST; AND
MATT NILEST                                                             APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
                            ACTION NO. 17-CI-002319


ROMAN KUSYO AND
NATALIE KUSYO                                                            APPELLEES


OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

JONES, JUDGE: All That N More, LLC ("All That"), a construction company,

and its owners, Marty and Matt Nilest, appeal orders of the Jefferson Circuit Court

which granted default judgment against the company and awarded damages to Roman and Natalie Kusyo based on a home construction contract. After thorough review, we affirm in part, reverse in part, and remand.

## I. BACKGROUND

This case has a somewhat lengthy and complex background and procedural history. In August 2016, the Kusyos signed a contract drafted by Appellants to construct a new home on a plot of land owned by the Kusyos in Louisville, Kentucky. Pursuant to the contract, All That agreed to construct the home for $228,500.00, payable in a series of installments or "draws" based on specific milestones achieved during the course of construction. Further, the contract required any changes or overages to be in writing and approved by both parties in what are referred to as "change orders." There were only two authorized change orders during the construction: an added room for $5,000.00 and a window for $320.00. This resulted in a new total owed on the contract of $233,820.00.

Unfortunately, All That encountered rock on the third day of excavating the foundation for the house. A "rock clause" in paragraph 6.5 of the contract, entitled "Concealed Conditions," applied to such an event:

> The Contractor is not responsible for subsurface or latent physical conditions at the site or in an existing structure that differ from those (a) indicated or referred to in the contract documents or (b) ordinarily encountered and generally recognized as inherent in the work of the character provided for in this contract.

> After receiving notice of the conditions, the Owner shall investigate the condition within five (5) working days. If the parties agree that the condition will increase (a) the Contractor's cost of performance of any part of the work under this contract or (b) the time required for that work, the parties may sign a change order agreement incorporating the necessary revisions, or the Owner may terminate the contract. If the Owner terminates the contract, the Contractor will be entitled to recover from the Owner payment for all work performed, including normal overhead, and a reasonable profit.

Matt Nilest informed the Kusyos' agent, their daughter Oksana, that All That had encountered rock. However, Oksana testified that she was informed there would be no added cost as a result; it would simply change how the house would be built, *i.e.*, "up" from the rock, rather than digging down through it. Matt Nilest denied telling Oksana there would be no added cost. Nonetheless, it is undisputed that no change order was prepared and signed at the time All That discovered rock on the property. It is likewise undisputed that the construction project continued after discovery and notice of the rock.

From September 2016 through January 2017, the Kusyos paid All That a total of $203,500.00, approximately eighty-seven percent of the contracted price. Oksana's fiancé noticed the house did not appear to be progressing, and it did not appear that drawn funds were being spent on intended purchases. Then, in February 2017, Oksana began to receive text messages and emails from Matt Nilest requesting more money, even though All That had drawn nearly all the

-3-

money allocated to it under the contract. The only remaining draw was the final ten percent of the contract price, which under the terms of the contract was due on the completion of construction. Oksana and her fiancé agreed to meet with the Nilests at the construction site on March 1, 2017, to discuss the project. During the meeting, the Nilests handed Oksana an invoice, dated that day, demanding a price addendum to the contract of $81,340.00 and claiming the new balance owed was $107,840.00, over and above the $203,500.00 which the Kusyos had already paid. Oksana declined to pay this new invoice. At the conclusion of this meeting, Appellants walked away from the job.

The Kusyos eventually hired a second contractor, Jeremy Murphy, to finish the house. Murphy would later testify the house was approximately fifty percent complete when he first inspected the site, and it contained incorrect or poor quality construction. As a result, the second contractor estimated it would take over $76,000.00 to repair the previous, subpar construction completed by Appellants and another approximately $200,000.00 to complete the remaining construction. At the time of the damages hearing in December 2019, the home was not yet complete.

Meanwhile, on May 11, 2017, the Kusyos filed a complaint against Appellants in Jefferson Circuit Court alleging breach of express contract, breach of express and implied warranty, negligent or reckless misrepresentation, and

violating KRS[1] Chapter 367 *et seq.*, the Kentucky Consumer Protection Act. The Kusyos alleged Appellants breached the contract by walking off the job site after receiving $203,500.00, when it appeared less than $80,000.00 had been expended on the project. The Kusyos also alleged the project was less than fifty percent complete when Appellants walked away from the contract and that it would require in excess of $150,000.00 to complete the construction of the home Appellants contracted to construct for them.

Appellants did not file an answer to the complaint within twenty days. The summonses for Matt Nilest and Marty Nilest were returned as undeliverable. However, on May 15, 2017, the summons for All That was successfully served upon its registered agent. All That had been dissolved as a corporate entity, but nonetheless remained subject to suit. *See* KRS 275.300(4)(a) ("Dissolution of a limited liability company shall not . . . [p]revent commencement of a proceeding by or against the limited liability company in its name[.]"). On June 21, 2017, the Kusyos moved the circuit court for default judgment against All That, and the circuit court granted this motion on June 23, 2017.

Several days later, attorney J. Clark Baird entered his appearance on behalf of Appellants. He subsequently filed a "motion to alter, amend, or vacate

---

[1] Kentucky Revised Statutes.

default judgment" citing CR[2] 59.05 or CR 60.02. The stated basis for this motion was that Appellants had previously "required time to acquire funds to retain counsel upon receipt of the complaint." (Record ("R.") at 33.) The circuit court granted Baird's motion to set aside the default judgment to allow Appellants to file answers to the complaint. "Marty Nilest, of All That N More, LLC" and "Matt Nilest, of All That N More, LLC" filed answers to the complaint, but All That did not. (R. at 47, 60.)

On July 31, 2017, the circuit court set aside its earlier order setting aside the June 23 order—effectively reinstating the default judgment. (R. at 74.) The court's July 31 order stated Appellants' CR 59.05 motion was untimely as its justification for setting aside the prior order. However, in a hearing on the motion that same day, the circuit court also stated that the CR 59.05 motion was not proper in any event, because the judgment was not final. It reasoned that instead Appellants should have moved to set aside the default judgment under CR 55.02.

Less than two weeks later, Appellants moved the circuit court to set aside the default judgment pursuant to the correct rule, CR 55.02. In a hearing on the motion, Baird blamed his secretary for mislabeling his previous motion as one to alter, amend, or vacate. He also repeated his earlier argument that the Nilests

---

[2] Kentucky Rules of Civil Procedure.

did not have funds to retain him in order to file an answer within the twenty days noted in the summons. After hearing the arguments of counsel, the circuit court ruled that the failure to raise a fee to pay an attorney does not amount to excusable neglect which would be sufficient to set aside a default judgment. The circuit court thereafter entered a written order on October 20, 2017, which summarily denied Appellants' motion to set aside the default judgment. (R. at 98.)

After retaining new counsel, Appellants again moved to set aside or, in the alternative, modify the default judgment. The circuit court heard arguments on the renewed motion on January 2, 2018. The circuit court noted it had already denied Appellants' motion to set aside and would not revisit that decision. However, the circuit court was willing to consider modifying the default judgment based on counsel's arguments that the Kentucky Consumer Protection Act was inapplicable in this context. The circuit court then ruled that these issues could be discussed at a hearing on the Kusyos' damages, which had yet to take place. Over the next several months, the circuit court continued the damages hearing while the parties argued over discovery. In a status hearing on June 25, 2018, Appellants argued the Kusyos were not supplying enough discovery materials regarding their asserted damages. In response, the Kusyos contended they had given documents to Appellants, but the damages were ongoing due to the continued construction on the

house.  The circuit court ruled the discovery period would continue until the end of August.

The circuit court held the damages hearing over two days, on December 14 and 19, 2018.  At the hearing, the circuit court heard testimony from Oksana and her fiancé which conformed to the above narrative.  The circuit court also heard from Jeremy Murphy, the general contractor employed by the Kusyos to complete construction on the house.  As noted previously, Murphy testified that the house was in poor repair when he first arrived on the site, containing approximately fifty percent usable work.  He also testified about the amounts required to repair and complete the structure.  Finally, the circuit court also heard from Matt and Marty Nilest.  The essence of Matt Nilest's testimony was that hitting rock changed the scope of the construction project in such a way that it could not help being a much more expensive undertaking.  He also stated the invoice he handed Oksana during the March 1, 2017, meeting amounted to the change order required under paragraph 6.5 of the contract.  Finally, Matt Nilest denied walking off the job.  Instead, he argued that the Kusyos had not allowed All That to finish construction, and that—if anything—the Kusyos owed money to Appellants.

Following post-hearing briefs by the parties, the circuit court entered its findings of fact, conclusions of law, and judgment on March 5, 2019.  The court

found there were only two valid change orders on the contract, one for $5,000.00 and one for $320.00. The circuit court also found that Appellants had walked off the job and thereby breached the contract. The Kusyos had conceded the Kentucky Consumer Protection Act was not applicable to real estate, and thus the circuit court disallowed recovery for punitive damages under that statutory scheme. Ultimately, the circuit court awarded damages to the Kusyos as follows: $76,045.40 for repairs; $101,500.00 in overpaid draws; $200,000.00 for the cost to complete the house; and $5,605.47 in expenses relating to the release of a brick subcontractor's lien. All told, the circuit court granted damages to the Kusyos amounting to $383,150.87, then added costs and attorney's fees in the amount of $24,601.18.

Appellants subsequently moved the court to alter, amend, or vacate the judgment, arguing against certain categories of damages and alleging the damage award gave the Kusyos a larger and more valuable home than Appellants originally contracted to construct. The circuit court denied this motion in an opinion and order entered on May 15, 2019. Regarding the damages awarded, the circuit court ruled the overpaid draws should be refunded because Appellants only completed approximately fifty percent of the work for which they were paid, and the award of attorney's fees was based on a provision in the contract granting such fees to the non-prevailing party. Regarding the size and value of the home, the

circuit court agreed the house was larger than originally contracted, but noted the Kusyos paid $5,000.00 for the five-hundred-square-foot addition. The circuit court ruled, "In sum, the house was not significantly different than the one [Appellants] contracted to build." (R. at 584-85.) This appeal followed.

## II. ANALYSIS

We begin with the general standard of review in cases where a circuit court acts as the factfinder. "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment . . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003). Factual findings are not clearly erroneous if supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). "Substantial evidence has been conclusively defined by Kentucky courts as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Res. and Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citations omitted).

Appellants present four main arguments on appeal. First, they argue the circuit court erroneously set aside its July 17, 2017 order which set aside the default judgment. Second, Appellants argue the circuit court erroneously awarded repayment damages. Third, Appellants argue the circuit court's damages award was not supported by the evidence. Fourth, and finally, Appellants argue the circuit court erroneously awarded attorney's fees. We will consider each argument in turn.

### A. *July 17, 2017 Order*

For their first argument, Appellants contend the circuit court erroneously set aside the July 17, 2017 order which set aside the default judgment. As noted previously, the circuit court's stated rationale for setting aside the July 17 order was that Appellants' CR 59.05 motion was untimely filed. In a somewhat convoluted argument, Appellants argue the original motion was not a valid CR 59.05 motion because there was no final judgment at that time, and thus the court's stated reason citing the untimeliness of the CR 59.05 motion as a reason to set aside the July 17 order was also erroneous.

Although Appellants correctly note the improper application of CR 59.05 early on in this case, we consider this to be of no significance to the underlying issue. Appellants themselves created this procedural muddle by incorrectly using CR 59.05 in an attempt to set aside the default judgment. The

record reflects how, in the midst of these proceedings, the circuit court correctly noted that CR 59.05 was not applicable and steered the parties toward the correct rule. Thus, we give no credence to the issue of whether CR 59.05 timing was appropriate to set aside the order because everyone acknowledges that using CR 59.05 here was incorrect from the beginning. The appropriate issue is whether the circuit court correctly ruled on the underlying question of whether there was sufficient reason to set aside the default judgment. This question is resolved by an examination of the correct rule, CR 55.02.

CR 55.02 allows a court to set aside a default judgment "[f]or good cause shown[.]" "The moving party must show: (1) a valid excuse for default, (2) a meritorious defense to the claim, and (3) absence of prejudice to the non-defaulting party. All three elements must be present to set aside a default judgment." *S.R. Blanton Development, Inc. v. Inv'rs Realty and Management Co., Inc.*, 819 S.W.2d 727, 729 (Ky. App. 1991) (citation and internal quotation marks omitted). We review a decision by the circuit court regarding whether to set aside a default judgment for an abuse of discretion. *VerraLab Ja LLC v. Cemerlic*, 584 S.W.3d 284, 287 (Ky. 2019). To find an abuse of discretion, we must find the "trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

The circuit court considered the default judgment under CR 55.02 in a hearing held on October 20, 2017. The record reflects Appellants and their eventual counsel had notice of the suit. "[M]ere inattention on the part of the defendant or his attorney" is not good cause to set aside default. *Howard v. Fountain*, 749 S.W.2d 690, 692 (Ky. App. 1988). The record also reflects Appellants consulted with attorney Baird about the complaint during the twenty-day time period provided for in the summons. Attorney Baird requested and received a copy of the complaint from the Kusyos' attorneys. Yet Appellants' only rationale for their failure to respond was that they had to raise money to retain attorney Baird to assist them. During the hearing, the circuit court held the failure to raise an attorney's fee was not a valid excuse for All That's failure to file an answer. We agree. *See*, *e.g.*, *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959) (purported inability to hire an attorney is not sufficient excuse for a failure to defend).

Appellants also argued that the answers submitted by the Nilests should be extended to cover All That as well, based on principles allowing multiple defendants to respond "in a joint or separate answer[.]" *Ellington v. Becraft*, 534 S.W.3d 785, 791 n.1 (Ky. 2017) (citation omitted). This argument ignores the fact that All That did not reply in a joint *or* separate answer; the two answers submitted were clearly on behalf of the individuals Matt and Marty Nilest

and not for the company itself. Appellants' motion to the circuit court conceded the pleadings submitted by previous counsel were "inartfully drawn." (R. at 111.) However, "[c]arelessness by a party or his attorney is not reason enough to set an entry aside." *Perry v. Central Bank & Tr. Co.*, 812 S.W.2d 166, 170 (Ky. App. 1991) (citation omitted).

Finally, the circuit court pointed out that the Kusyos would be prejudiced by setting aside default, in that they were only able to obtain a construction loan to finish their house based on the default judgment against Appellants. Based on these factors, we cannot say the circuit court abused its discretion in refusing to set aside the default judgment.

## B. Repayment Damages

For their second issue, Appellants contend the circuit court's award of repayment damages was erroneous. They allege several different grounds in support of this argument. First, Appellants contend the Kusyos failed to timely disclose their alleged damages resulting from overpaid draws when they provided "Supplemental Discovery Responses" on the day before the damages hearing was scheduled, contrary to CR 8.01(2). Second, Appellants contend the repayment of draws is not a proper measure of damages. Third, Appellants contend that an award providing repayment of draws as well as the cost to complete construction results in a double recovery to the Kusyos.

-14-

We need not consider the first or second grounds asserted by Appellants because we agree with the third argument. The circuit court's award based on overpaid draws improperly allowed a double recovery for the Kusyos.

> In the case of a breach of contract, the goal of compensation is not the mere restoration to a former position, as in tort, but the awarding of a sum which is the equivalent of performance of the bargain—the attempt to place the plaintiff in the position he would be in if the contract had been fulfilled.

*Batson v. Clark*, 980 S.W.2d 566, 577 (Ky. App. 1998) (quoting *SEG Employees Credit Union v. Scott*, 554 S.W.2d 402, 406 (Ky. App. 1977)). Here, if the contract between Appellants and the Kusyos had been fulfilled, the Kusyos would have paid the contract price, approximately $233,820.00, and in exchange would have gotten their contracted house. We disagree with Appellants' claim that the Kusyos are getting a better house than that promised by the contract, because the circuit court determined that the Kusyos paid $5,000.00 for the additional square footage in a valid change order. The circuit court then concluded "the house was not significantly different than the one [Appellants] contracted to build." As an appellate court, we defer to the factual findings of the trial court unless they are clearly erroneous. *Kentucky Properties Holding LLC v. Sproul*, 507 S.W.3d 563, 568-69 (Ky. 2016); CR 52.01.

Having established the house actually constructed is consistent with the parties' contract, we now turn to the purchase price. As provided by the

-15-

contract and amended by valid change orders, the Kusyos owed $233,820.00 under the contract for the construction. The Kusyos paid $203,500.00 to Appellants, and the circuit court ordered $101,500.00 of that amount to be refunded in an award for overpaid draws. These draws were deemed overpayments because they were based on construction which was not performed by Appellants. The circuit court then awarded the Kusyos another $200,000.00 for the completion of the house. The problem is that this $200,000.00 effectively *also* compensates the Kusyos for the unperformed construction. Logically, if Appellants had performed more work under the draws, this would have reduced the amount of work the second contractor needed to perform.

Because the completion amount overlaps the amount awarded on the basis of the overpaid draws, the circuit court inadvertently awarded the Kusyos a double recovery. Based on these considerations, we reverse that portion of the award based on overpaid draws as duplicative of amounts already awarded to the Kusyos based on completing construction of the house. It is also worth noting that the circuit court's damage award does not account for the $30,320.00 ($233,820.00 - $203,500.00) which the Kusyos may still owe toward the completion of the house pursuant to the contract. If this amount is taken into consideration anywhere in the record by the circuit court, we have been unable to find it. Despite these considerations, the awards based on repair of Appellants' construction and the

brick subcontractor's lien appear to be grounded in substantial evidence, and we affirm those portions of the judgment.

## C. *Damages Not Supported by the Evidence*

For their third argument on appeal, which is closely related to the second, Appellants contend the amounts awarded to the Kusyos were not supported by the evidence. Appellants argue, "From the evidence at the damages hearing, it would be impossible to determine the cost to complete the structure which All That contracted to construct for the Kusyos." (Appellants' Brief at 16.) A review of the record refutes this argument. As previously noted, the circuit court found the house being built is "not significantly different" than the one contracted. Murphy, the replacement contractor hired by the Kusyos, testified that the total amount required for him to complete the structure, including the repairs, will be about $285,000.00. The circuit court's award, when shorn of the improper refund of overpaid draws, is consistent with this amount. We defer to the circuit court's findings when supported by substantial evidence, giving "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

Appellants also argue the amount of the damage award is speculative, pointing to the fact that the Kusyos' house was not yet completed at the time of the hearing. However, "[i]f it is established with reasonable certainty that damage has resulted from a breach of duty or a wrongful act of defendant, mere uncertainty as

-17-

to the amount will not preclude recovery." *Roadway Exp., Inc. v. Don Stohlman & Associates, Inc.*, 436 S.W.2d 63, 65 (Ky. 1968). Aside from the issues in the award regarding double recovery and possible underpayment by the Kusyos on the contract, which we noted in the previous argument, we affirm the circuit court's award of damages.

### D. Attorney's Fees

In their fourth and final argument, Appellants contend the circuit court erroneously awarded attorney's fees to the Kusyos. Originally, the Kusyos pleaded a claim for attorney's fees in Count III of the complaint, alleging a violation of the Kentucky Consumer Protection Act, which provides a statutory basis for such an award. However, the parties dismissed this count by agreement when they discovered the Kentucky Consumer Protection act does not apply to real estate transactions or construction contracts, pursuant to *Craig v. Keene*, 32 S.W.3d 90 (Ky. App. 2000) and its progeny.

Citing *O'Rourke v. Lexington Real Estate Company, L.L.C.*, 365 S.W.3d 584 (Ky. App. 2011), Appellants contend the prayer for attorney's fees in the *ad damnum* clause was not sufficient to state a cause of action to recover those fees. The circuit court disagreed and awarded the Kusyos attorney's fees based on a provision of the construction contract which shifted liability for attorney's fees to the non-prevailing party.

Admittedly, our case law is not entirely clear on how attorney's fees must be pleaded when the right to such fees arises out of a contract. In *Nesselhauf v. Haden*, 412 S.W.3d 213 (Ky. App. 2013), we held that placing "attorney's fees in the 'prayer for relief' sections of two pleadings . . . was insufficient to create a separate claim for relief." *Id*. at 217 (citation omitted). Commenting on *O'Rourke*, we said that case stood for the proposition that "a claim does not arise merely from stating a prayer for relief in the *ad damnum* section clause of a pleading; a party must also state why he or she is legally entitled to that which is being requested."

However, *O'Rourke* and *Nesselhauf* are factually distinguishable. *Nesselhauf* was a family law case where the request for attorney's fees was made in response to motions filed by the other party, and was not brought to the trial court's attention until well after ten days following the trial court's order adjudicating custody causing the trial court to lose jurisdiction over the issue of attorney's fees. *O'Rourke* considered whether the complaint provided notice to defendant that the plaintiff was seeking attorney's fees pursuant to KRS 383.660(3), which permits attorney's fees where the landlord shows "willful noncompliance" with the rental agreement by the tenant. We held that the defendant was not given notice of any acts or omissions alleged against him that would authorize application of KRS 383.660(3). *O'Rourke*, 365 S.W.3d at 587.

In this case, the Kusyos stated their claims for breach of contract in Count I of the complaint, attached a copy of the contract to their complaint, and included a request for attorney fees in their prayer for relief. Unlike the plaintiff in *O'Rourke*, the Kusyos did not have to prove the existence of any additional conduct to give rise to their right to recover attorney's fees for breach of contract. The contract itself provided that: "If either party to this contract defaults, the defaulting or non-prevailing party shall be liable to the other party for all cost, including reasonable attorney's fees incurred in enforcing or defending any rights or obligations created by this agreement." Therefore, by pleading a breach of contract, the Kusyos put Appellants on notice of the acts and omissions that would authorize imposition of attorney's fees. While it would have been preferable for the Kusyos to have included a reference to a right to recover attorney's fees for breach of the contract, we cannot agree that our liberal pleading standards require such notice, especially where the contract was included as part of the complaint. Accordingly, we affirm the circuit court's award of attorney's fees in this case.

### III. CONCLUSION

For the foregoing reasons, we affirm the amounts awarded in the judgment, including the award of attorney's fees, excepting that we reverse the circuit court's award of damages to the Kusyos which were grounded in overpaid draws. In addition, on remand, we direct the circuit court to conduct further

proceedings which will determine if there are any amounts owed by the Kusyos on their contract and, if so, to reduce their award to reflect their obligations under the contract toward construction of the home. The circuit court shall thereafter enter a new judgment not inconsistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Thomas E. Roma, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEES:

Sarah Chervenak
Britt Stevenson
Louisville, Kentucky