Robert THOMPSON, Plaintiff,

Michigan Mutual Liability Company, a Michigan corporation, Intervenor and Cross Defendant,

v.

ROADWAY EXPRESS INCORPORATED, a foreign corporation, Defendant and Cross Plaintiff.

Civ. A. No. 17457.

United States District Court
E. D. Michigan, S. D.

Dec. 20, 1959.

George A. Jones, Detroit, Mich., for plaintiff.

Thomas J. Shelly, of Imesch, Worrell, Thomas & Zajac, Detroit, Mich., for Mich. Mut. as intervenor-plaintiff.

George H. Cary and Lawrence A. Bohall, of Cary, BeGole & Martin, Detroit, Mich., for Mich. Mut. as cross defendant.

G. Cameron Buchanan and John A. Kruse, of Alexander, Cholette, Buchanan, Perkins & Conklin, Detroit, Mich., for Roadway Express.

THORNTON, District Judge.

This is an action commenced November 19, 1957, in which plaintiff Thompson claimed damages for personal injury resulting from an accident which occurred on or about September 24, 1956. Jurisdiction inheres by virtue of diverse citizenship. The facts may be recited readily. Thompson was employed as a truck driver by Short Freight Lines. A truck [1] of Short Freight Lines carrying certain merchandise and driven by Thompson left the Short Freight Lines terminal and proceeded to the Roadway Express terminal, a distance of about a mile. The trip was made so that the merchandise on the Short Freight Lines' trailer could be transferred to Roadway Express for transportation by it to its destination outside the state. At the dock of Roadway a Roadway employee, Reuben, assisted plaintiff in unloading the truck. The last item was a large and heavy crate for the unloading of which Reuben obtained an electric fork-lift-truck which he drove onto the trailer. He and plaintiff proceeded to attempt to use this for unloading the large heavy crate—1100 pounds and 20 feet long, 7½ feet high, and 1 foot wide, approximately.[2] The ef-

1. Tractor and trailer.

2. Stipulation of facts herein, third page.

forts of the two men in this attempt proved unavailing so Reuben alighted from the truck with a remark to plaintiff to the effect that he was going to get a "chain" or a "roller".[3] It was at this point that the crate began to "teeter" [3] and that plaintiff attempted to get away from it, off the truck, but was unable to escape and was pinned by the crate as it fell on him. He was hospitalized for about two months and has been receiving treatments ever since. So much for a summary of what happened *before* suit was started. The sequence of events *subsequent* to the filing of suit is of less tragic import certainly, but just as certainly it is less orthodox in character. The answer that was filed by Roadway was prepared and filed December 10, 1957, on its behalf by its own personal attorneys whom we shall refer to as the *Buchanan* firm, since Mr. Buchanan signed the pleadings. On April 29, 1958, Mr. Buchanan took the deposition of plaintiff and subsequently filed it. On October 23, 1958, a *substitution* of attorneys was effected by which a firm we shall refer to as the Cary firm was substituted as attorneys for Roadway in the place and stead of the Buchanan firm. Although it does not appear of record, as of that date, it is well to here state the reason for this substitution. The Cary firm appeared on October 23, 1958, to defend Roadway in the capacity of representing the Michigan Mutual Liability Company which carried Short Freight's insurance, the particular policy involved being the subject matter of this controversy. The Cary firm, in taking over the defense of Roadway, was doing so on the theory that the omnibus coverage contained in Short Freight's Michigan Mutual policy extended protection to Roadway in this situation. It is not clear who was responsible for this theory, although it seems to have been Michigan Mutual. At any rate, the pleadings simply indicate a *change from the Buchanan firm to the Cary firm* as attorneys for Roadway

on October 23, 1958, eleven months after suit was filed. On December 1, 1958, a stipulation and order for intervention was filed permitting intervention by an intervenor plaintiff. Said intervenor plaintiff filed its complaint on January 26, 1959, claiming its right to a share in any proceeds by virtue of being the carrier of Workmen's Compensation for Short Freight Lines and having therefore paid workmen's compensation to plaintiff. It so happens that the intervenor plaintiff is Michigan Mutual Liability Company, represented in its intervenor plaintiff status by another law firm, Imesch, Worrell, Thomas & Zajac. We are not here concerned with the intervenor aspect of this case except to comment on two points. First, the stipulation for intervention was signed by both sets of Roadway attorneys, the Cary firm and the Buchanan firm. This has significance that will be adverted to later in this opinion. An answer to intervenor plaintiff's complaint was filed by Roadway, by the Cary firm. The answer appears to be the routine, "admits", "denies", "leaves plaintiff to its proof", and asks "verdict of no cause of action." Less than two months after the filing of this answer (January 29, 1959, to March 6, 1959) the Cary firm filed a motion to withdraw as attorneys for defendant Roadway. The affidavit filed in support of the motion states that the theory upon which the Cary firm represented Roadway was based on a mistake, and that the policy in question issued by Michigan Mutual to Short Freight not only does not extend coverage to Roadway but specifically excludes such coverage. The exclusion provision of the policy provides that when a carrier such as Roadway "satisfies the security requirements of the Motor Carrier Law by some means other than automobile liability insurance, then the omnibus coverage provided in the policy of the Short Freight Lines, by Michigan Mutual Liability Company is excluded and does not extend coverage to Roadway Express, Inc." [4] Another

---

3. Plaintiff's deposition, page 20.

4. Affidavit attached to Motion to Withdraw as Attorneys for Defendant, filed March 6, 1959, by the Cary firm.

substitution of attorneys was then filed (April 27, 1959) with the Buchanan firm "back in" and the Cary firm "out". Roadway then filed a cross-complaint against Michigan Mutual, already in here as a party by virtue of its intervenor plaintiff status, claiming that Michigan Mutual rather than Roadway is liable to plaintiff, because of the omnibus coverage. It is the omnibus coverage which Michigan Mutual claims is excluded by the above quoted provision. The parties agree that Roadway complied with the Motor Carrier Law "by some means other than automobile liability insurance" which fact shall be adverted to later on in this opinion.

It appears that Roadway and Michigan Mutual were able to share a common view point in one other respect. Plaintiff Thompson agreed to accept the sum of $15,000 in full settlement of his claim in this lawsuit. An order to this effect was therefore entered by the Court on May 26, 1959, pursuant to a stipulation. A copy of said stipulation is attached to this opinion. It will be noted that it bears the signature of the Buchanan firm, as representing Roadway, and that according to it the question remaining for determination is that of liability as between Roadway and Michigan Mutual. The complaint against Michigan Mutual is actually 2-pronged and the parties, in their briefs and arguments, have so treated the issues. We may refer to one prong as the *estoppel theory*, and to the other as the *policy theory*. Roadway contends that the conduct of Michigan Mutual in assuming the defense and taking full charge on behalf of Roadway estops Michigan Mutual from denying liability and from arguing non-coverage by the omnibus coverage in its policy. In support of this *estoppel theory* it cites a line of cases to the effect that when an insurer undertakes defense of a case without a reservation of rights and enters upon said defense it is estopped to deny insurer liability. It may be noted, however, that generally those cases deal with situations where the insurance company failed to raise the issue of failure of compliance with certain conditions subsequent. We do not find them to be authority for the proposition that one can be estopped into a position of contractual liability where no contract ever existed or, more particularly, where contractual liability has been specifically excluded. The *policy theory* is simply that the policy should be construed as providing protection to Roadway as an omnibus insured. Roadway contends that the policy in fact does this, and that if there be any ambiguity or lack of certainty on this score the resolution should be in favor of Roadway and against Michigan Mutual, the preparer of the policy.

We turn first to a consideration of the *estoppel theory*. A determination favoring this theory would be dispositive of this matter and render it unnecessary for us to reach the *policy theory*. The line of insurance cases that has evoked application of this type of theory, and also of waiver principles, is neatly reviewed in the annotation at 38 A.L.R.2d 1148. We are impressed that § 5 commencing on page 1157 has direct application to the situation here, both as to the cases cited and as to the general theory. We quote the first paragraph under § 5:

> "It seems well established that, if a liability insurer's defense of an action against the insured is to work an estoppel barring the insurer from subsequently raising the defense of non-coverage, or some other defense existing at the time of the accident, it must be shown that prejudice resulted from the insurer's conduct in defending the action against the insured."

There are any number of variations on the particular theme of insurer-liability versus insurer-nonliability, and this is one particular variant. We think the proper ruling, in view of the law as set

down in the cases and as it appears in 38 A.L.R.2d supra, is that the estoppel theory must fail. A glance at the court docket discloses that

| | |
|---|---|
| Suit was commenced | Nov. 19, 1957 |
| Answer was filed by the *Buchanan* firm | Dec. 10, 1957 |
| Deposition of plaintiff taken by *Buchanan* firm 4/29/58 and filed | June 16, 1958 |
| A substitution of attorneys was filed (Cary firm "in" and Buchanan firm "out") | Oct. 23, 1958 |
| A stipulation permitting compensation carrier to intervene filed (signed by *both* Cary firm and Buchanan firm as attorneys for defendant) | Dec. 1, 1958 |
| Answer of defendant to the *declaration of intervenor plaintiff* filed by *Cary firm* | *Jan. 29, 1959* |
| Motion by Cary firm to withdraw as attorneys for defendant filed | Mar. 6, 1959 |
| A substitution of attorneys filed (Buchanan firm "in" and Cary firm "out"). | Apr. 27, 1959 |

---

It should be borne in mind that the *Buchanan* firm represents defendant directly and it is the Cary firm which undertook the insurance company-defense of defendant. The appearance of the Cary firm for defendant lasted from October 23, 1958, until April 27, 1959. (It moved to withdraw March 6, 1959.) It will be noted that during its term of "assuming the defense" and taking "full control of the litigation" for the defense, the one and only act performed by it alone, as reflected by the court docket entries, was to file a perfunctory answer on behalf of defendant to the complaint of the intervenor plaintiff on January 29, 1959. The Cary firm signed the stipulation permitting intervention, but so did the *Buchanan* firm. What is more significant is that the *Buchanan* firm filed the answer for defendant to plaintiff's complaint. The *Buchanan* firm took the deposition of plaintiff April 29, 1958, and filed it June 16, 1958. And finally, the *Buchanan* firm signed the stipulation for settlement with plaintiff. (The Cary firm also signed this stipulation which was filed May 26, 1959.) How there could be an estoppel raised here is a question which defies an affirmative answer. Defendant Roadway has been so far from prejudiced by the insurance company defense that it is difficult to believe it is seriously contending this. From the beginning of this suit to the time of the settlement Roadway's own personal attorneys have either conducted or participated in every phase with the

exception of the filing of the perfunctory answer to the complaint of the intervenor plaintiff. All signposts here point to the nonexistence of prejudice. The *estoppel theory* falls of its own weight.

Having disposed of the *estoppel theory* in the above manner we come now to the *policy theory*. We attach to this opinion a copy of the section of the policy here in controversy. It seems to us that there is no ambiguity here to be resolved in its favor. We cannot resolve a nonexistent ambiguity in favor of anyone.

The meaning of the language employed is clearly to the effect that the omnibus coverage does not extend where the party seeking its protection "is subject to the security requirements of any motor carrier law and satisfies any such requirements by any means other than automobile liability insurance * * *." The parties are in agreement that Roadway was subject to the security requirements of the motor carrier law and did, in fact, satisfy such requirements by the posting of a bond and not by automobile liability insurance. We cannot state the matter more clearly than this. For these reasons the *policy theory* also fails, and the liability here falls on the shoulders of Roadway. An appropriate order may be prepared.

### Stipulation

It Is Hereby Stipulated by and between the parties hereto by their respective attorneys as follows:

1. That the case of Robert Thompson plaintiff versus Roadway Express Incorporated, a foreign corporation, defendant be settled for the total sum of $15,000.00 and no costs.

2. That the respective rights of Michigan Mutual Liability Company, a Michigan corporation intervenor and cross defendant and the Roadway Express Incorporated, a foreign corporation, defendant and cross plaintiff shall be determined by the Court as a matter of law, including the determination of which of said parties shall pay the aforesaid sum

of $15,000.00 to the plaintiff Robert Thompson.

/s/ George A. Jones

George A. Jones, Attorney for Plaintiff

/s/ Thomas J. Shelly

Imesch, Worrell, Thomas & Zajac and Cary, BeGole & Martin, Attorneys for Intervenor

Alexander, Cholette, Buchanan, Perkins & Conklin

By: /s/ John A. Kruse

Attorneys for defendant and cross plaintiff

NC–55

### Endorsement

Receipts Basis—Truckmen
(Form A)

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments applies with respect to all owned automobiles and hired automobiles, and the use, in the business of the named insured, of non-owned automobiles, subject to the following provisions:

"1. Definition of Insured. As respects such insurance, Insuring Agreement III, Definition of Insured, is replaced by the following:

"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile. The insurance with respect to any person or organization other than the named insured does not apply:

260

"(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others, with respect to any automobile of the commercial type * * * if such person or organization so engaged is subject to the security requirements of any motor carrier law and satisfies any such requirements by any means other than automobile liability insurance * * *."