**GOLF COURSE SUPERINTENDENTS ASSOCIATION OF AMERICA,**
Plaintiff,

v.

**UNDERWRITERS AT LLOYD'S, LONDON, Defendant.**

No. 88–4251–R.

United States District Court, D. Kansas.

March 15, 1991.

Michael Kelley, Robert D. Ochs, Golf Course Superintendents Assoc. of America, Topeka, Kan., for Golf Course.

Steven Johnson, Justice King, Fisher, Patterson, Sayler & Smith, Topeka, Kan., for Underwriters.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiff, the Golf Course Superintendents Association of America ("GCSAA"), filed this action to recover certain monies pursuant to an insurance policy issued by defendant, Underwriters at Lloyd's of London ("Lloyd's"). GCSAA was a defendant in the case of *Zahid Iqbal v. Golf Course*

*Superintendents Association of America,* 717 F.Supp. 756, in this court. A jury found that GCSAA illegally retaliated against Mr. Iqbal (terminated his employment) because he had filed a lawsuit under 42 U.S.C. § 1981 against GCSAA. The jury awarded Mr. Iqbal $50,000.00. In the case at bar, GCSAA claims that Lloyd's must indemnify GCSAA for the amount of the judgment.

This case is now before the court upon cross-motions for summary judgment. Oral argument has been conducted upon these motions. It appears from the pleadings and the oral argument that the facts are not in dispute. This is largely a matter of interpreting the insurance contract between the parties and deciding whether Lloyd's should be estopped from declining coverage under the contract.

The relevant facts are as follows. Under the insurance policy in question, Lloyd's agreed to indemnify GCSAA and "its Directors, Officers, employees and the members of its committees for all sums which they shall become legally obligated to pay by reason of any *wrongful act* committed or alleged to have been committed by them while in the operation, administration, or management of services provided by [GCSAA] or on behalf of [GCSAA],...." (Emphasis supplied.)

"Wrongful act" is defined in the policy as "any negligent act, error, omission, misstatement or misleading statement committed or alleged to have been committed by [GCSAA] or its Directors, Officers, employees or the members of its committees while in the operation, administration or management of services provided by [GCSAA] ..."

The policy also expressly excludes any coverage of claims arising out of or directly or indirectly attributable to "dishonesty" of GCSAA.

An endorsement to the policy further provides that the parties "understood and agreed" that the policy did not include coverage of any loss or defense fees or costs with respect to prior discrimination claims against GCSAA which were noted in a financial statement of the association.

After being informed of the *Iqbal* lawsuit, which was filed in February 1984, a representative of Lloyd's wrote GCSAA on March 28, 1984. This letter stated in part:

The allegations of the complaint also give rise to certain additional coverage issues. Initially, there are allegations of intentional conduct on behalf of the Association. In this regard, Exclusion 5(a) deletes coverage for any dishonesty on the part of the assureds. Therefore, any amounts which may be awarded on the basis of this excluded conduct would not be provided coverage.

. . . .

In the event that any amounts awarded on the basis of punitive damages are not otherwise excluded, the certificate does limit coverage for same to $50,000. [Lloyd's] would have no obligation or responsibility for any amounts in excess of said limits of liability. In view of the foregoing, [Lloyd's] ... reserve[s] all of [its] rights with respect to this matter. Subject to the foregoing reservation of rights, it is our understanding that the law firm of Fisher, Ochs, Heck & Wright ... is proceeding to defend the interests of the Association in this matter with Robert D. Ochs, Esq. being the attorney directly in charge of said defense. By carbon copy of this letter, I am informing Mr. Ochs of the coverage issues presented, as well as our request that we be kept informed of the progress of this action.

After receiving correspondence from Mr. Robert Ochs, GCSAA's attorney, counsel for Lloyd's wrote back on April 24, 1984 regarding coverage of the *Iqbal* lawsuit. This letter stated in part:

I thank you for your extensive research and effort regarding the coverage issues presented. While I note your advice as to the current status of Kansas law regarding the duty of defense in a situation where the action arguably falls within the scope of the complaint, that aspect of this matter is not at issue. As noted in my letter of March 28, 1984 on the matters which may fall outside the

scope of coverage under the policy, such as a demand for punitive damages and the allegations of intentional conduct, Underwriters have reserved their rights. We have not asserted that the allegations of the complaint fall outside the scope of coverage so as to bar any duty on the part of Underwriters to indemnify for defense costs.

. . . .

Nor, in fact, are we stating in any way that your firm should be defending the interests of the insurer, in addition or opposed to the interests of the insured. My firm represents the interests of Underwriters and it is clear that your firm, as local defense counsel, is representing the interests of the assured Association alone.

. . . .

On this basis, I do wish to confirm to you that, subject to a full reservation of rights as to all of the coverage issues presented, those interested Underwriters at Lloyd's, London subscribing to Certificate No. 83–A–221 have agreed to assume the defense of this action on behalf of the Golf Course Superintendents Association of America and through your firm, as local defense counsel. This assumption of defense is, of course, also subject to the deductible of $500 per claim, which deductible is applicable to both loss payments and claims and defense fees, costs, charges and expenses.

Then, on March 27, 1986—the last day of the trial of the *Iqbal* case—counsel for Lloyd's again wrote counsel for GCSAA as follows:

This action is essentially one based upon allegations that your association intentionally discriminated against the claimant due to his national origin. In this regard, Exclusion 5(A) deletes coverage for any dishonesty on the part of the assureds. Therefore, any amounts which may be awarded on the basis of this excluded conduct would not be provided coverage. Additionally, intentional conduct on the part of the assured is not within the meaning of wrongful act as defined by the policy, consequently coverage would not be afforded for an act of discrimination.

The legal principles which govern the construction of a contract of insurance, as well as the burden of proof in this case, were summarized in *Dronge v. Monarch Ins. Co.*, 511 F.Supp. 1, 4–5 (D.Kan.1979), wherein the court drew heavily from the case of *Mah v. United States Fire Ins. Co.*, 218 Kan. 583, 545 P.2d 366 (1976):

The law provides that in construing an insurance policy, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense. *Mah, supra; Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P.2d 157 (1970). When an insurance contract is not ambiguous, a court may not make another contract for the parties. An unambiguous contract must be enforced according to its terms. *Mah, supra; Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 449 P.2d 477 (1969); *Simpson v. KFB Insurance Co., Inc.*, 209 Kan. 620, 498 P.2d 71 (1972).

However, a contract of insurance may be ambiguous. To be ambiguous the contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves one genuinely uncertain which one of two or more meanings is the proper meaning. *Mah, supra; Clark v. Prudential Ins. Co.*, 204 Kan. 487, 464 P.2d 253 (1970); *Western Casualty & Surety Co. v. Budig*, 213 Kan. 517, 516 P.2d 939 (1973). Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the in-

sured must prevail. *Mah, supra; Goforth v. Franklin Life Ins. Co., supra.* This is because an insurance contract is by nature an adhesion contract. *Gowing v. Great Plains Mutual Ins. Co.,* 207 Kan. 78, 483 P.2d 1072 (1971).

The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. *Mah, supra; Goforth, supra.* In determining the intention of the parties to a contract of insurance, the test is not what the insurer intends the printed language to mean, but rather what a reasonable person placed in the position of the insured would have understood the words to mean. *Fancher v. Carson–Campbell, Inc.,* 216 Kan. 141, 530 P.2d 1225 (1975); *Gowing v. Great Plains Mutual Ins. Co., supra; Walker v. Imperial Casualty & Indemnity Co.,* 1 Kan.App.2d 349, 564 P.2d 588 (1977). Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so, employing such language as will clearly and distinctly reveal its stated purpose. *Fancher v. Carson–Campbell, Inc., supra; Gowing, supra; Goforth, supra.* This rule of construction applies with particular force to provisions which attempt to exclude liability coverage under certain conditions. *Gowing, supra,* citing *Prickett v. Hawkeye–Security Insurance Company,* 282 F.2d 294 (10th Cir.1960). It is a general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. *Krug v. Millers' Mutual Insurance Ass'n.,* 209 Kan. 111, 495 P.2d 949 (1972). *See generally Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.,* 215 Kan. 937, 529 P.2d 171 (1974); *Fowler v. United Equitable Ins. Co.,* 200 Kan. 632, 438 P.2d 46 (1968); *Wise v. Westchester Fire Ins. Co.,* 463 F.2d 386 (10th Cir.1972).

As to the burden of proof, the well-established rule is that when an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden of proof rests upon the insurer to prove the facts which bring the case within such specific exception. The burden is on the insured to prove that the loss was of a type included in the general coverage provisions of the insurance contract. Thus, the distinction between "coverage" provisions and exculpating or "exclusionary" clauses in an insurance contract is the decisive factor in determining which party has the burden of proof on an issue, where coverage under the policy is disputed. *Baugher v. Hartford Fire Ins. Co.,* 214 Kan. 891, 522 P.2d 401 (1974); *Krug v. Millers' Mutual Insurance Ass'n., supra.*

Lloyd's makes three arguments for summary judgment. First, Lloyd's contends that the insurance contract at issue does not cover liability for claims of intentional conduct. Lloyd's observes that GCSAA was found guilty of retaliation, which is intentional conduct. Therefore, Lloyd's asserts that it is not liable to pay the judgment against GCSAA in the *Iqbal* case.

This argument is persuasive to the court. The insurance contract covers liability for "wrongful acts" which are defined as "any negligent act, error, omission, misstatement or misleading statement." Intentional conduct, such as retaliation against an employee for filing suit under 42 U.S.C. § 1981, is not contained in this definition. See *Richards v. Fireman's Fund Ins. Co.,* 417 N.W.2d 663 (Minn.App. 1988) (professional liability policy covering a life underwriter against claims for "any negligent act, error or omission" does not cover breach of employment contract claim in the absence of a claim of negligence); *School Dist. No. 1 v. Mission Insurance Co.,* 58 Or.App. 692, 650 P.2d 929 (1982) (errors and omissions policy covering a

school district against claims for "any negligent act, error or omission" does not cover disparate treatment employment discrimination claims, but disparate impact claims which do not require a showing of discriminatory intent could fall under the policy); see also, *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir.1980) *cert. denied*, 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (insurance policy covering "occurrences," which are defined as accidental or unintentional events, does not cover employment discrimination claim which alleges disparate treatment); *City of Fort Pierre v. United Fire & Casualty Co.*, 463 N.W.2d 845 (S.D.1990) (errors and omissions policy covering "any negligent act, error or omission" does not protect city against claim of intentional conduct—coverage is also excluded by another policy provision); *Grieb v. Citizens Casualty Company*, 33 Wis.2d 552, 148 N.W.2d 103 (1967) (errors and omissions policy covering an architect against claims for "any act of negligence, error, mistake or omission" does not cover conspiracy suit regarding the award of a construction contract—coverage is also excluded by another policy provision); but see, *Continental Casualty Company v. Reed*, 306 F.Supp. 1072 (D.Minn.1969) (standard errors and omissions language covers claim based on intentional conduct in the absence of exclusionary provision clearly barring such a claim).

GCSAA contends that the definition of "wrongful act" is ambiguous and should be liberally construed in favor of GCSAA. GCSAA argues that "negligent" in the phrase "negligent act, error, omission, misstatement or misleading statement" could be interpreted as modifying only the word "act." In this way, intentional errors or omissions would be covered under the policy. GCSAA further contends that this is a logical construction of the policy because misstatements or misleading statements are not negligently made.

We disagree with these arguments as have the majority of courts in the above-cited cases. We believe it makes better sense and captures the intent of the parties to construe the definition of "wrongful act" so that the word "negligent" modifies every relevant term of the definition. It would be self-defeating to limit the definition of "wrongful act" to negligent acts, but at the same time cover intentional errors or omissions. Furthermore, as Lloyd's points out, misstatements and misleading statements *are* negligently made at times. A cause of action exists for negligent misrepresentation. *Johnson v. Geer Real Estate Company*, 239 Kan. 324, 720 P.2d 660 (1986); *E.F. Hutton & Co. v. Heim*, 236 Kan. 603, 694 P.2d 445 (1985). Because the policy expressly excludes coverage of claims alleging dishonesty, it is quite consistent to construe the definition of wrongful act to cover only negligent misstatements or negligent misleading statements. Moreover, in the *Iqbal* case, GCSAA was not found liable for making negligent or intentional misrepresentations or misstatements. So, plaintiff cannot claim coverage on the grounds that the judgment was premised on a finding of misrepresentations or misstatements of any kind.

During oral argument, counsel for GCSAA made the additional contention that the endorsement expressly excluding coverage of a previously filed sex discrimination claim, is evidence that the parties did not intend to exclude coverage of future discrimination claims, such as Mr. Iqbal's. GCSAA argues that if the parties intended to exclude the coverage of future discrimination claims, a similar exclusionary clause regarding such claims would also be in the policy. We disagree with this point. First, we note that our construction of the policy does not bar coverage of *all* discrimination claims; claims of discriminatory impact, as opposed to discriminatory treatment, could still be covered. See *Solo Cup Co. v. Federal Ins. Co., supra; School Dist. No. 1 v. Mission Insurance Co., supra.* Therefore, it is possible for the parties to intend to exclude coverage of claims of intentional conduct, without intending to exclude coverage of all future claims of discrimination. Additionally, it is impossible to ignore the insurance contract's definition of what *is* covered. The policy should not be construed only in light of what is expressly excluded from coverage.

In sum, contrary to GCSAA's position, we believe the policy clearly limits its coverage of "wrongful acts" to negligent acts, negligent errors, negligent omissions, negligent misrepresentations and negligent misleading statements. GCSAA was found liable for intentionally retaliating against Mr. Iqbal because he filed a lawsuit under 42 U.S.C. § 1981. Such intentional conduct is not covered by the policy at issue.

■ GCSAA has suggested that the jury may not have found GCSAA to have intentionally retaliated against Mr. Iqbal. We disagree. Obviously, GCSAA intended to discharge Mr. Iqbal. Under the instructions, the jury found that the "effective reason" for Mr. Iqbal's termination was his filing of a discrimination complaint. There was no claim of disparate impact. So, the jury must have found that defendant intentionally terminated Mr. Iqbal because he filed a discrimination complaint. This was an essential finding for a recovery in the *Iqbal* case. See *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 733 (9th Cir.1986) (claims under section 1981 require proof of intentional discrimination); *Goff v. Continental Oil Co.*, 678 F.2d 593, 599 (5th Cir.1982) (to prove retaliation claim under § 1981 there must be proof of a causal connection between protected activity and adverse employment action); *E-Z Loader Boat Trailers v. Travelers Indemnity Co.*, 106 Wash.2d 901, 726 P.2d 439, 443 (1986) (en banc) (the concept of retaliation as prohibited by Washington civil rights statute "can only come about by the performance of an intentional act").

■ GCSAA has suggested that it could have acted in ignorance of the law or without advice of counsel. This would not make retaliation unintentional, however. The jury found GCSAA liable for intentional retaliation against Mr. Iqbal. This misconduct, because it was intentional, is not a "wrongful act" covered by the insurance policy at issue in this case.

■ Lloyd's has raised a second argument for summary judgment which is based on an exclusion clause in the insurance policy. The policy excludes coverage of claims arising from the dishonesty of GCSAA. Lloyd's contends that the claims made in the *Iqbal* case were claims of dishonesty. "Dishonesty" is not defined in the insurance policy at issue. Lloyd's does not cite authority for the proposition that retaliation or discrimination is commonly considered an act of dishonesty. We believe this is an instance in which the provisions of the insurance contract must be construed against the insurer. It is not clear that retaliation or discrimination are acts of dishonesty as that term is used in the insurance policy. Therefore, the court rejects Lloyd's second argument for summary judgment.

Lloyd's third and final argument for summary judgment is that the relief sought by plaintiff violates the public policy of Kansas and the United States. Here, Lloyd's contends that indemnifying GCSAA for its intentional misconduct is against public policy.

When the insurance policy in question was issued, it was against public policy in Kansas to enforce an insurance contract covering intentional and malicious acts. *Spruill Motors Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). In 1984, a statute—K.S.A. 40-2,115—became effective which stated that it was not against public policy for a person to obtain insurance covering liability for punitive damages assessed as a result of intentional acts. This statute does ·not absolve insurance contracts of any conflict with public policy which existed prior to the effective date of the statute. *Southern American Insurance v. Gabbert-Jones, Inc.*, 13 Kan.App.2d 324, 769 P.2d 1194, 1198 (Kan.App.1989) (an illegal contract is not rendered legal by a subsequent change in public policy). However, we are not holding that the insurance contract in this case covered intentional acts. Our construction of the insurance policy relieves it of the charge that it was violating public policy at the time the contract was executed.

■ GCSAA contends that Lloyd's should be estopped from denying coverage of the judgment. If the court accepts this argument, then we will not be enforcing a contract. Instead, we will be granting eq-

uitable relief. Such relief would not violate current public policy. As previously stated, insurance coverage of punitive damages granted to punish intentional conduct is no longer contrary to public policy in Kansas. Nor do we believe the relief would be contrary to public policy in the United States. See *School District v. Continental Casualty Co.*, 912 F.2d 844 (6th Cir.1990) (liability policy not void on public policy grounds in Michigan if it is interpreted to cover religious discrimination damages). Liability on the basis of estoppel would be centered on a finding that an insurance company cannot assume the defense of an action to the detriment of the insured, but deny liability for the payment of the judgment, without an adequate reservation of rights. There is nothing in such a holding which violates United States public policy.

In sum, of Lloyd's three arguments for summary judgment, we accept the first argument, i.e., that claims based on intentional conduct are not covered by the insurance policy in question. We reject the argument that the claims in the *Iqbal* case were excluded from coverage by the "dishonesty" clause of the policy. We also reject the contention that granting GCSAA relief in this case would violate public policy. Lloyd's should be granted summary judgment in this case on the basis of the first argument, unless there is a noncontractual basis for liability. GCSAA asserts estoppel as such a basis for liability.

■ The estoppel argument asserts that by assuming the defense costs, Lloyd's is estopped from denying coverage of the judgment because Lloyd's failed to make an adequate and timely reservation of its rights to deny coverage. We may agree with parts of the estoppel argument. Ultimately, however, GCSAA cannot prevail upon estoppel grounds because it cannot demonstrate prejudice from Lloyd's actions.

■ Kansas courts have stated the following rule:

" '[I]f a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. The insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy, regardless of the fact that there has been no misrepresentation or concealment of material facts on its part, and notwithstanding the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer.' "

*Snedker v. Derby Oil Co.*, 164 Kan. 640, 192 P.2d 135, 137 (1948) (quoting 29 AM. JUR. 672, § 878). The "principle" involved in this rule, according to the court in *Snedker*, was stated in a Minnesota case:

" 'By undertaking the defense the company elected to treat plaintiff's cause of action, if he had any, as covered by its contract; and when it substituted itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company of the assured.' "

*Id.* 192 P.2d at 138 (quoting *Patterson v. Adan*, 119 Minn. 308, 138 N.W. 281). In other words, the rule prevents an insurance company from taking over the defense of a matter but avoiding the coverage of the end result, without an adequate reservation and warning to the insured. That way, the insured can make its own decision regarding the need for independent defense counsel.

In the *Snedker* case there was no reservation of rights by the insurance company. But, the court did not end its analysis with that fact and conclude that the insurance company was estopped from denying coverage. Instead, the court proceeded to examine whether the insurance carrier actually conducted the defense. The court held that there was estoppel only after finding "ample evidence" supporting the conclusion that the insurance company did represent the insured in the damage action. *Id.*

In other Kansas cases involving questions of the adequacy of a reservation of rights, it is clear that counsel for the insur-

ance company conducted the defense for the insured. In *Henry v. Johnson*, 191 Kan. 369, 381 P.2d 538 (1963), counsel for the insurance company entered a general appearance on behalf of the insured and filed a motion seeking to set aside an order of default judgment against the insured. In *Bogle v. Conway*, 199 Kan. 707, 433 P.2d 407 (1967), the insurance company also handled the defense for the insured in a damage action. Both of these cases presented a situation of a possible conflict of interest between the policy defense of the insurance company and the defense of the damage action against the insured. So, prejudice to the insured from an inadequate reservation of rights could be inferred. *Id.* 433 P.2d at 413.

For the litigation of the *Iqbal* case, Lloyd's paid the defense costs, but GCSAA was represented by independent counsel of its choosing. Lloyd's did not assume and conduct the defense of the *Iqbal* case. Therefore, there was no conflict of interest between Lloyd's and GCSAA. In other cases, courts have refused to find estoppel when the insurer has not controlled the insured's defense. *Hoyt v. St. Paul Fire and Marine Ins. Co.*, 607 F.2d 864 (9th Cir.1979); *Stone & Webster Engineering Corp. v. American Motorist Ins. Co.*, 458 F.Supp. 792, 797 (E.D.Va.1978) *aff'd*, 628 F.2d 1351 (4th Cir.1980); *DiPrampero v. Fidelity & Casualty Co.*, 190 F.Supp. 518 (W.D.Pa.1961); *Thompson v. Roadway Express, Inc.*, 179 F.Supp. 254 (E.D.Mich. 1960); *O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1178–79 (Alaska 1981); *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24 (1976); *Snodgrass v. Baize*, 405 N.E.2d 48, 53 (Ind.App.1980); *Universal Underwriters Ins. Co. v. Travelers Ins. Co.*, 451 S.W.2d 616 (Ky.App.1970); *American Legion Tri–County Memorial Hospital v. St. Paul Fire & Marine Ins. Co.*, 106 N.J.Super. 393, 256 A.2d 57 (N.J.App.1969); *Western Casualty & Surety Co. v. City of Santa Fe*, 84 N.M. 409, 504 P.2d 17 (1972). See also, Windt, INSURANCE CLAIMS AND DISPUTES § 2.10 (2d ed. 1988); 7C Appleman, INSURANCE LAW AND PRACTICE § 4693 at p. 328 (1979).

Under Kansas law, GCSAA has the burden of proving estoppel. *Henry v. Johnson, supra,* 381 P.2d at 543. The Tenth Circuit has construed Kansas law in this area as requiring proof by the person asserting estoppel that he changed his position to his detriment—in other words, some showing of prejudice. *Glenn v. State Farm Mutual Automobile Ins. Co.,* 341 F.2d 5, 7 (10th Cir.1965). The court believes there has been no showing of prejudice in this case where GCSAA was in control of the defense of the *Iqbal* case. This means the court need not decide whether the reservation of rights was unclear or untimely because GCSAA did not suffer prejudice because of any alleged problem with the reservation of rights.

In conclusion, the court finds that Lloyd's has demonstrated the judgment in question was not covered by its insurance contract with plaintiff. GCSAA cannot prove that Lloyd's should be estopped from asserting noncoverage. There are no material issues of fact which require a trial in this case. Therefore, defendant's motion for summary judgment shall be granted. Plaintiff's motion for summary judgment shall be denied. This case is ordered dismissed with plaintiff taking nothing.

IT IS SO ORDERED.