IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,291

DANIEL BECKER,
*Appellant*,

v.

THE BAR PLAN MUTUAL INSURANCE COMPANY,
*Appellee*.

SYLLABUS BY THE COURT

1.

An insurer who undertakes a defense without an adequate reservation of rights may thereafter be estopped from disclaiming coverage.

2.

An adequate reservation of rights will bar claims of estoppel based upon the insurance company's assumption of the insured's defense.

3.

Generally, whether estoppel is appropriate in a given situation is a question of fact, and disputed questions of fact make summary judgment inappropriate.

4.

The determination of adequacy, e.g., timeliness, of the reservation of rights is a particular question of fact making the issue unsuitable for summary judgment.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 23, 2015. Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed October 26,

1

2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded to the district court with directions.

*Keynen J. Wall*, of Forbes Law Group, LLC, of Overland Park, argued the cause, and *Matthew T. Geiger* and *Benjamin R. Prell*, of Geiger Prell, LLC, of Overland Park, and *Daniel J. Langin*, of Langin Law Firm, LLC, of Overland Park, were with him on the briefs for appellant.

*James C. Morrow*, of Morrow Willnauer Klosterman Church, LLC, of Kansas City, Missouri, argued the cause, and *M. Todd Moulder* and *Marshall W. Woody*, of the same firm, were with him on the briefs for appellee.

The opinion of the court was delivered by

PER CURIAM:  The district court granted summary judgment to The Bar Plan Mutual Insurance Company (The Bar Plan) on Daniel Becker's insurance coverage dispute with the company. A Court of Appeals panel affirmed the district court's decision. Both lower courts essentially concluded that contrary to Court of Appeals caselaw, Becker was asking for the coverage to be expanded beyond the insurance contract's terms.

We hold that both lower courts erred. Stated simply, they were wrong to rely upon "expansion of coverage" caselaw—and under the correct caselaw, questions of fact remain which are inappropriate for summary judgment. So we reverse both lower courts' decisions and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Between March 2010 and March 2012, Becker made a series of loans totaling $5,569,000 to Professional Cleaning and Innovative Services, Inc. (PCI). The business was owned by Brenda Wood.

Becker hired Sheila Seck and her law firm, Seck and Associates, LLC, to represent him in these loan transactions. But Seck failed to perform a UCC search on the collateral that Wood provided to secure Becker's loans. Consequently, Becker did not know Wood's collateral was already subject to a properly filed security interest of lender Farmers Bank. Becker would not have made the loans had he known of the bank's superior position. The PCI business eventually soured, and Wood's shaky financial situation was exposed. But Becker continued to make loans in a last-ditch effort to help Wood save the business.

In December 2011 Becker finally discovered the Farmers Bank UCC security interest filing, which dated back to 2007. Becker and Seck traded emails, with Becker asking why she had not found the prior filing and expressing his displeasure at her failure.

Finally, in Becker's February 6, 2012 email he fired Seck as counsel. He pointed out the errors that Seck had made:

> "I have found and been advised of two monumental errors on your part. The first is an error in the UCC filing, where Brenda [Wood] pledged 900 shares and you filed 500. The second is the lack of diligence and attention in bothering to check to see if someone else had a lien on Brenda's assets.
>
> . . . .

3

"I found and [*sic*] amazing lack of concern, diligence, prudence and ability to think outside the box in the performance of your services."

Becker concluded his email with a request that Seck inquire of her insurance carrier:

"Pls [*sic*] forward my file or bring it over when you get the chance. I would also appreciate your inquiry with your Insurance carrier, as I have yet not quantified what I expect to be very large damages."

But later that day Becker sent Seck a friendlier email. In the following months, the two continued to have an amicable social relationship. They lived on the same block, and their children were friends. Seck and Becker's wife had lunch together, and they played tennis.

Becker initially focused his financial recovery efforts on Wood. But Wood's August 2012 declaration of bankruptcy caused Becker to shift his attention to Seck.

During this time, Seck had legal malpractice insurance through The Bar Plan. She had a policy in effect from October 2011 to October 2012 (2011 policy). And she renewed her coverage for October 2012 to October 2013 (2012 policy). The policy had a limit of $100,000 per claim and a $300,000 aggregate limit.

Seck did not advise The Bar Plan of Becker's February 6, 2012 email that notified Seck of her alleged "monumental" legal errors and that asked her to contact her insurance carrier. And in her insurance renewal application—filled out seven months later in September 2012—she did not mention the Becker situation.

Two months later, on November 12—after Becker's recovery efforts against Wood were unsuccessful—he sent a demand letter to Seck and her law firm. One week later, on November 19, Seck notified The Bar Plan of the demand.

Ten days later, on November 29, after Charles Coffey was assigned by The Bar Plan to the claim, he received a packet of information from Becker's attorney. It included Becker's February 6, 2012 email to Seck notifying her of her purported legal errors and asking her to contact her insurance carrier.

Coffey read the email at that time. He told Seck that he did not see any coverage issues initially but cautioned the claim would be subject to a more thorough analysis. Beginning in November 2012, Coffey requested Seck's files from her a number of times and, in an internal company email, eventually noted the ongoing difficulty in getting Seck to provide them.

On January 10, 2013, Becker filed suit for legal malpractice against Seck and her firm. By January 25, The Bar Plan had assigned attorney Mimi Doherty to Seck's defense. On February 4, after Doherty's initial review, she advised other attorneys at The Bar Plan that the case would be difficult to win and that The Bar Plan would probably want to settle. Seven days later on February 11, Seck ultimately provided her file to The Bar Plan.

On February 22, Becker's attorneys submitted a policy limits settlement offer for the aggregate limit of $300,000. This amount was based on their view that because Becker had made multiple loans, he had multiple claims of Seck's malpractice. But The Bar Plan's attorneys viewed this as a single claim—subject to a $100,000 limit—and let the settlement offer lapse.

5

Three days later, on February 25, Coffey began reviewing the file for insurance coverage issues. On March 5, a "coverage file" was opened and another attorney for The Bar Plan, Valerie Polites, was assigned to conduct a coverage review.

Six days later, on March 11, The Bar Plan sent Seck a reservation of rights letter. By March 28, Polites concluded Becker's claim was not covered due to Seck's untimely notice to the company. She drafted a denial of coverage letter and, approximately three weeks later, on April 16, sent it to Seck.

Becker's counsel renewed the $300,000 policy limits settlement demand. Meanwhile, Seck appealed the denial of coverage through The Bar Plan's appeal process. The Bar Plan denied her appeal.

On August 23, 2013 (after the denial of the coverage appeal), Seck confessed judgment to Becker for $3,905,000. She assigned Becker all her rights to sue The Bar Plan for bad faith as consideration for Becker's agreement not to enforce or collect on the judgment against her.

Four days later Becker filed a petition for "insurance bad faith" against The Bar Plan. Both sides moved for summary judgment, and the court granted The Bar Plan's motion.

The Court of Appeals affirmed. *Becker v. The Bar Plan Mut. Ins. Co.*, No. 113,291, 2015 WL 9459771 (Kan. App. 2015) (unpublished opinion). We granted Becker's petition for review of the panel's decision under K.S.A. 20-3018. Our jurisdiction is under K.S.A. 60-2101(b) (review of Court of Appeals decision).

6

Issue*: An insurer's failure to give an adequate and timely reservation of rights can give rise to an insured's claim of estoppel.*

Becker argues that The Bar Plan assumed Seck's defense without a timely reservation of rights and that Seck detrimentally relied on its assumption of her defense. He concludes The Bar Plan therefore should have been estopped from asserting any coverage defenses. Hence the lower courts erred in ruling against him.

The Bar Plan responds that the district court correctly applied the law to deny Becker's motion for summary judgment and to determine that waiver and estoppel were not warranted to expand coverage beyond that actually contracted for by the parties. It reasons that if Becker cannot prove the contract of insurance *ever* provided coverage, then neither waiver nor estoppel can apply to provide any coverage.

*Standard of review*

Because this case was decided under K.S.A. 60-256, summary judgment standards are applied on appellate review. An appellate court reviews summary judgment de novo. *South Central Kansas Health Ins. Group v. Harden & Co. Ins. Services, Inc.*, 278 Kan. 347, 350, 97 P.3d 1031 (2004) (citing *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 820, 934 P.2d 65 [1997]); see *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

The standard for summary judgment is well-known:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015); *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 653, 234 P.3d 780 (2010).

The facts are not disputed.

"When the evidence pertaining to the existence of a contract or the content of its terms is conflicting or permits more than one inference, a question of fact is presented. However, whether undisputed facts establish the existence and terms of a contract raises a question of law for the court's determination. See *Hays v. Underwood*, 196 Kan. 265, 267, 411 P.2d 717 (1966). There is no factual dispute among the parties on the events leading up to the filing of Nungesser's automobile negligence action against Bryant. Thus our appellate review of the district court's ruling on summary judgment is unlimited. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004)." *Nungesser v. Bryant*, 283 Kan. 550, 566-67, 153 P.3d 1277 (2007).

*General discussion*

The district court concluded that the legal malpractice insurance contract between Seck and The Bar Plan was a "claims-made" policy. Claims-made policies cover losses that are claimed *during* the policy period. By contrast, "occurrence policies" cover losses

8

that occur during the policy period—regardless of *when* the claim is made. *National Union Fire Ins. Co. v. FDIC*, 264 Kan. 733, 744, 957 P.2d 357 (1998). In a claims-made policy, coverage is not provided for an action or omission that occurred in a previous coverage period if the insured has prior knowledge but fails to report it. *American Special Risk Management Corp. v. Cahow*, 286 Kan. 1134, 1143, 192 P.3d 614 (2008).

In evaluating Seck's prior knowledge, the district court applied a two-prong, subjective-objective test. It determined that Seck had definitive, subjective knowledge of the facts forming the basis of Becker's claim for legal malpractice. It also determined that an objective, reasonable attorney in Seck's position could reasonably expect these facts to be the basis of a claim against her. Accordingly, she was not entitled to coverage under the terms of the insurance contract because of her late notification to The Bar Plan. Setting aside whether summary judgment was appropriate under these circumstances, we will continue with the lower courts' analysis.

In analyzing Becker's argument that The Bar Plan should be estopped from asserting coverage defenses, the district court relied primarily on Kansas Court of Appeals caselaw that provides "[i]t is a general rule, acknowledged in this jurisdiction, that waiver and estoppel may be invoked to forestall the forfeiture of an insurance contract but they cannot be used to expand its coverage." *Western Food Prod. Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375, 381, 699 P.2d 579 (1985). Because the court had previously determined that due to Seck's late or insufficient notice, she was not entitled to coverage under the clear terms of the insurance contract, it reasoned that application of waiver or estoppel would functionally "expand" the coverage—contrary to the Court of Appeals caselaw.

The Court of Appeals panel affirmed the district court, but only briefly touched on the issue of estoppel. The panel ruled that Kansas courts have allowed insurers to raise

9

policy defenses even when the insurer has breached its duty to defend or failed to reserve its rights. Under Kansas law, the reservation of rights rule allows an insurer to assume a defense of an insured without waiving noncoverage defenses by issuing a timely notice to that person, reserving the right to question coverage and assert policy defenses. *Bell v. Tilton*, 234 Kan. 461, 465, 674 P.2d 468 (1983). While acknowledging The Bar Plan's reservation of rights was untimely, the panel held that fact alone did not prevent the company from raising policy defenses.

The panel cited the same Court of Appeals decisions as the district court. It too concluded that "[i]t is a general rule, acknowledged in this jurisdiction, that waiver and estoppel may be invoked to forestall the forefeiture [*sic*] of an insurance contract *but they cannot be used to expand its coverage*." (Emphasis added.) *Becker*, 2015 WL 9459771, at *11.

We begin our analysis by observing this "general rule" has never been explicitly adopted by this court. The line of cases cited by the lower courts shows that the rule was first cited in *Swanston v. Cuna Mutual Ins. Society*, 7 Kan. App. 2d 28, 31, 636 P.2d 1368 (1981). *Swanston*'s cursory citation of this rule was almost an afterthought and derives from two legal encyclopedias cited as its authority:  43 Am. Jur. 2d, Insurance § 1058, p. 983 (1969); and 45 C.J.S., Insurance § 674, p. 616 (1946).

In the next case citing this rule, the dispute was over the amount covered by the insurance contract. *Ron Henry Ford, Lincoln, Mercury, Inc. v. Nat'l Union Fire Ins. Co.*, 8 Kan. App. 2d 766, 667 P.2d 907 (1983). The insured sought to have the extent of damages measured by a report filed after the loss. But the panel held that a value reporting clause in the contract limited damages to the last report of values filed prior to the loss. In other words, the court found that the insured could not invoke waiver or estoppel to expand the value of property covered by the contract.

10

Finally, the *Western Food* case directly cited by the lower courts discloses another distinguishable set of facts. That case involved an insurance contract for an aircraft which explicitly stated the pilot flying the aircraft must have a current and proper medical certificate and pilot's certificate. The contract also explicitly stated that there was no coverage under the policy if the pilot did not meet those requirements. The court concluded that when a pilot without a current medical certificate was operating the aircraft, the defendant's policy unambiguously excluded coverage of the factual situation. So waiver and estoppel were improper because they would expand the contract.

Under both later cases, attempts were made to gain coverage—either of property value or of factual situations—where none existed. Perhaps more importantly, the insurer's conduct did not induce the insured's detrimental reliance.

This court has discussed the concept of an unbargained-for expansion of coverage. But we have not adopted a per se rule concerning estoppel. In *Cahow*, 286 Kan. 1134, the issue was whether a claims-made insurance policy covered the claim when the insured did not disclose the potential claim during the insurance application. This court found that allowing a late notice, outside of the terms of the contract, would constitute an unbargained-for expansion. 286 Kan. at 1143. However, *Cahow* did not involve an assertion of estoppel; it was strictly a question of coverage.

As Becker points out, the "expansion of coverage" rule cited by both lower courts contradicts a longstanding rule in this jurisdiction. Specifically, an insurer who undertakes a defense without a reservation of rights is thereafter estopped from disclaiming coverage:

11

"'The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of *forfeiture or noncoverage under the policy*, assumes and conducts the defense of an action brought against the insured, *without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground for forfeiture or noncoverage. The insurer's conduct in this respect operates as an estoppel to later contest an action upon the policy*, regardless of the fact that there has been no misrepresentation or concealment of material facts on its part, and notwithstanding the facts may have been within the knowledge of the insured equally as well as within the knowledge of the insurer.'" (Emphasis added.) *Snedker v. Derby Oil Co., Inc.*, 164 Kan. 640, 643, 192 P.2d 135 (1948) (quoting 29 Am. Jur. 672, § 878).

As support for the same principle the court also cited 81 A.L.R. 1326 et seq. and 45 C.J.S., Insurance § 714.

In the *Snedker* line of cases, the issue was not whether the insurance policy applied to the underlying claim but whether the insured was prejudiced by the insurer's actions. See *Bell*, 234 Kan. at 465; *Bogle v. Conway*, 199 Kan. 707, 713, 433 P.2d 407 (1967); *Henry v. Johnson*, 191 Kan. 369, 375-78, 381 P.2d 538 (1963); *Snedker*, 164 Kan. at 643. So we reject The Bar Plan's additional argument that estoppel, and its accompanying prejudice factor, cannot apply to the issue of coverage under its claims-made policy. See *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 786-87 (Tex. 2008) (claims-made insurance policy not a bar to insured asserting estoppel to recover for reliance damages); see *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh, PA*, 398 Ill. App. 3d 710, 720-21, 929 N.Ed.2d 531 (2010) (claims-made policy could still be subject to estoppel claim).

We conclude both the district court and the panel erred in relying on the "expansion of coverage" rule because it focuses on preventing expansion of the covered

property or the specific perils insured against. Instead, the lower courts should have continued their analysis to see if estoppel was appropriate to apply to our facts under the "reservation of rights" rule.

The lower courts discussed waiver and estoppel somewhat interchangeably. See *Becker*, 2015 WL 9459771, at *11. The two theories often overlap, but there is a distinction, as we discussed in *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769-70, 388 P.3d 84 (2017).

Waiver occurs when a party affirmatively takes action that shows an intent to give up a right. *Steckline*, 305 Kan. at 769. But with estoppel, a party is prevented from enforcing an existing right. 305 Kan. at 770. "[T]he continued existence of the right itself does not preempt a claim of equitable estoppel." 305 Kan. at 770. Accordingly, estoppel is the doctrine we examine here.

The party asserting equitable estoppel must show that (1) another party induced reliance on certain facts, (2) the party asserting estoppel reasonably relied upon those facts, and (3) that party was prejudiced by its reliance. *Steckline*, 305 Kan. at 770 (quoting *Owen Lumber Co. v. Chartrand*, 289 Kan. 911, 927, 157 P.3d 1109 [2007]). Generally, whether estoppel is appropriate in a given situation raises a question of fact. See *Bowen v. Westerhaus*, 224 Kan. 42, 48, 578 P.2d 1102 (1978). And disputed questions of fact typically make summary judgment—as granted in the instant case— inappropriate. *Drouhard-Nordhus*, 301 Kan. at 622 (summary judgment appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law).

Moreover, where an insurer assumes the defense of an insured, this court has held that once reliance has been established, prejudice to the insured will be assumed. *Bogle*, 199 Kan. at 714 (noting prejudice was assumed in *Henry*, 191 Kan. 369). "We approve this as the better rule because . . . since the course cannot be rerun, it would be futile to attempt to prove or disprove that the insured would have fared better on his own." 199 Kan. at 714. Indeed, a clear potential for an insurer's conflict of interest exists once it assumes a defense of the insured. Specifically, in the underlying liability action against the insured, a policy defense could be developed at the expense of the insured. See 199 Kan. at 714; see also *Golf Course Superintendents Ass'n v. Underwriters*, 761 F. Supp. 1485, 1492 (D. Kan. 1991) (prejudice to insured may be inferred from inadequate reservation of rights).

*Adequacy of reservation of rights*

As noted, an insurer can both satisfy its duty to defend its insured and preserve any defenses of noncoverage via a reservation of rights. *Snedker*, 164 Kan. at 643. Crucial to Becker's argument that estoppel is an appropriate weapon for him is his assertion that although The Bar Plan *did* issue a reservation of rights letter on March 11, 2013, that letter was untimely. Thus in his view it was inadequate and therefore the entry of summary judgment against him was improper on this disputed issue. "[W]hen we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus*, 301 Kan. at 622.

Becker supports his position by pointing out The Bar Plan had notice of the grounds for noncoverage nearly four months earlier: November 29, 2012. That is when Coffey reviewed the packet of information from Becker's attorney containing the February email to Seck notifying her of her alleged "monumental" legal errors and asking her to contact her insurance carrier. As the district court correctly pointed out, "The Bar

14

Plan cannot argue both that the February 6, 2012 letter should have put Seck on notice of a potential Claim but should not have put The Bar Plan on notice of a ground of forfeiture or noncoverage."

Before proceeding, some further background about reservation of rights is in order. As noted, the reservation of rights rule allows an insurer to assume a defense of an insured without waiving noncoverage defenses by issuing a timely notice to that person, reserving the right to question coverage and assert policy defenses. *Bell*, 234 Kan. at 465. Of more specific importance to the instant case, an adequate reservation will bar claims of estoppel based upon the company's assumption of the insured's defense. 234 Kan. at 465 (insurer who provided defense, while reserving policy defenses, was not estopped from asserting policy defense in subsequent garnishment proceeding).

The rule allows an insured, e.g., Seck, to make an informed decision about "whether to consent to the assumption of his defense and the control of his lawsuit by the carrier, or to take another course." *Bogle*, 199 Kan. at 713; see *Henry*, 191 Kan. at 376. But a failure to effectively—or to altogether—so notify the insured is usually fatal to the insurer. 199 Kan. at 714-15 (Appellant insurance carrier's letter to insureds did not notify them of carrier's position "and hence was ineffective to reserve to appellant the right to disclaim liability under its policies and save it from the bar of waiver or estoppel in the garnishment proceeding. Therefore, the trial court correctly rendered summary judgment against appellant."); accord *Snedeker*, 164 Kan. at 644-46 (insurance carrier represented insured in damage action but did not make disclaimer of liability or reserve right to assert noncoverage under the policy; in garnishment proceeding against insurance carrier, court held carrier not entitled to contend policy did not cover its insured's accident).

In many cases, the insurer reserves its rights contemporaneously or almost contemporaneously with its assumption of its insured's defense. While we decline to make a bright line rule requiring such, a court must nevertheless consider that

> "the insured must be fairly and *timely* informed of the insurer's position. That information should include the basis for the position taken by the insurer. Only then is the insured in a position to make his choice as to the course to pursue in protecting himself. The insured may or may not wish to permit the insurer to carry on his defense under its contract obligation to do so. We think that is the import underlying *Henry v. Johnson*. (See annotation and cases cited at 38 A.L.R. 2d 1148 and A.L.R. 2d Later Case Service; also 7A Appleman, Insurance Law and Practice [1962] § 4694.)" (Emphasis added.) *Bogle*, 199 Kan. at 713.

In response to the carrier's argument that often the insurer may not know until conclusion of the litigation whether it is liable or not, the *Bogle* court stated: "We have no quarrel with this theory provided the insured is adequately and *timely informed* of the insurer's position." (Emphasis added.) 199 Kan. at 714.

In sum, Becker asserts estoppel, which we acknowledge can be barred by (among other things) the insurer's adequate reservation of rights. But the determination of adequacy, e.g., timeliness, of that reservation is a particular question of fact making this issue unsuitable for summary judgment. See *Bowen*, 224 Kan. at 48 (generally, whether estoppel is appropriate in given situation raises question of fact); *Golf Course Superintendents*, 761 F. Supp. at 1492 (estoppel's prejudice element may be inferred from insurer's inadequate reservation of rights to insured); see also *Drouhard-Nordhus*, 301 Kan. at 622 (summary judgment appropriate only when no genuine issue as to any material fact and moving party entitled to judgment as matter of law).

16

Several genuine issues of material fact remain, e.g., on the issue of estoppel. So the summary judgments of the Court of Appeals and district court are reversed. The case is remanded to the district court for further proceedings consistent with this decision.